ABBIE P. CROSSMAN, administratrix, *vs.* MASSACHUSETTS BENEFIT ASSOCIATION.

Bristol. Oct. 26, 27, 1886. — Jan. 11, 1887. DEVENS & W. ALLEN, JJ., absent.

Under the St. of 1880, *c.* 196, § 3, providing that any beneficiary association may hold, as a death fund belonging to the beneficiaries of anticipated deceased members, an amount not exceeding one assessment, and that nothing in the section shall be held to restrict such death fund to less than $10,000, a beneficiary association holding such a fund, when a loss occurs, is not obliged to pay the loss out of the fund, but may make an assessment therefor; and the fact that it designates such fund as a reserve fund is immaterial.

A certificate of membership issued by a beneficiary association to C. provided that a failure to comply with the rules of the association as to payment should render the certificate void. A rule of the association also provided that, if an assessment was not received within thirty days from the mailing of the notice, it should be taken "as sufficient evidence that the party has decided to terminate his connection with the association, which connection shall thereupon terminate, and the party's contract with the association shall lapse and be void; but said party may again renew his connection with the association by a new contract made in the same manner as at first; or for valid reasons to the officers of the association (such as a failure to receive notice of an assessment) he may be reinstated by paying assessment arrearages." C. was habitually unpunctual in paying his assessments, and, in many instances, the association received the assessments after they were due, and the officers required him to sign certificates

that he was in good health before they would reinstate him. The association levied an assessment, which C. failed to pay within thirty days, and he died without paying the same. *Held,* in an action by the administrator of his estate to recover the amount of his certificate of membership, that there was no evidence of a waiver by the association of the provision of the certificate as to payment of assessments.

CONTRACT, by the administratrix of the estate of Robert H. Crossman, to recover $10,000 on two certificates of membership in the defendant association. Trial in the Superior Court, before *Barker,* J., who ordered a verdict for the defendant; and, at the plaintiff's request, reported the case for the determination of this court. The facts appear in the opinion.

*W. C. Parker & R. F. Raymond,* for the plaintiff.

*A. E. Avery,* for the defendant.

MORTON, C. J. Each of the certificates under which the plaintiff claims provides that " a failure to comply with the rules of said association, as to payment, or falling into gross and confirmed habits of intoxication, shall also render this certificate void."

It is admitted that the deceased, Robert H. Crossman, with whom the contract was made, and of whom the plaintiff is the widow and administratrix, failed to pay an assessment levied on December 1, 1884, and payable on December 30, 1884; and that such assessment has never been paid. *Prima facie,* this failure to comply with the rules rendered his certificates void.

But the plaintiff contends that the assessment was illegal and invalid, because, at the time it was laid, the association had money enough in its hands to meet all its obligations, and therefore that it was not authorized to lay an assessment.

We agree with the counsel for the plaintiff, that it was not the intention of the Legislature that associations of this character should become great financial institutions, with the capacity of accumulating and holding funds to an unlimited amount. The Legislature has established the limits to which they may go in this direction. The St. of 1880, *c.* 196, § 3, provides that " any beneficiary corporation, association, or society organized under the laws of this Commonwealth shall have the right to hold at any one time, as a death fund belonging to the beneficiaries of anticipated deceased members, an amount not exceeding one assessment from a general or unlimited membership, or

an amount not exceeding in the aggregate one assessment from each limited class or division of such society or association."

In the case before us, it is not shown that the defendant has exceeded the authority conferred on it by this statute.

The report states that, in 1881, the defendant began to accumulate a fund called in its books a "reserve fund;" and that, "on December 1, 1884, said reserve fund so accumulated amounted to $67,281.17, and each policy-holder had contributed to that fund a sum equal to one death assessment upon his policy." At that time, "the association had been notified of death losses amounting to $55,000, which remained unpaid," some of which were contested. It is immaterial whether the fund authorized by the statute is called on the books a reserve fund or a death fund. The object of the Legislature probably was to enable such associations to strengthen their position by accumulating a fund to meet unusual emergencies.

The idea of holding money as a fund imports permanency to some extent. The statute does not provide that losses by death shall be paid out of this fund as they occur. To do this would soon deplete and destroy the fund, and defeat the object of the statute. Nor does the statute, directly or by implication, provide that no assessment shall be laid so long as there is enough in the reserve fund to meet losses as they occur. The officers of the association might use a part of the fund to pay a loss; they are not compelled to do so, and it was within their discretion to lay an assessment.

The plaintiff contends that the statute was passed to meet the case where a large association lays an assessment, which is of greater amount than is necessary to pay losses by death which have occurred; and that, by its true construction, it only authorizes the association to hold the balance as a fund until other deaths occur. But this is not the direct and natural meaning of the language used; and the proviso, that "nothing in this section shall be held to restrict such death fund to less than ten thousand dollars," contradicts this construction, as, under it, any association may hold a fund equal to ten thousand dollars, although a death assessment amounts to less than that sum.

We are therefore of opinion, that, according to law and according to the contract, the assessment in question was legal and valid.

The plaintiff further contends, that the Superior Court erred in the ruling that there was no evidence which would warrant the jury in finding that the defendant had waived the provisions of the contracts rendering them void upon failure to pay the assessment within thirty days. The evidence shows that the deceased was habitually unpunctual in paying his assessments, and that, in many instances, the defendant received the assessments after they were due, and reinstated him as a member of the association. This was a waiver of these several forfeitures. But there is no evidence to show that the defendant intended to waive the future prompt payment of assessments as one of the conditions of the contract, or that the deceased, as a reasonable man, was led to believe by its actions that it had waived this condition.

The third rule, which is a part of the contract, provides that, if the assessment is not received within thirty days from the mailing of the notice, it shall be taken " as sufficient evidence that the party has decided to terminate his connection with the association, which connection shall thereupon terminate, and the party's contract with the association shall lapse and be void; but said party may again renew his connection with the association by a new contract made in the same manner as at first; or for valid reasons to the officers of the association (such as a failure to receive notice of an assessment) he may be reinstated by paying assessment arrearages."

It is to be presumed that, in making and receiving the several payments in arrear, the parties acted under this provision of their contract. There is no evidence to the contrary, but there is evidence that, in several instances, the officers required him to sign certificates that he was in good health before they would reinstate him. The whole evidence shows that both parties understood that they were acting under the third rule, that default in prompt payment of assessments was not immaterial, but was vital, and worked a forfeiture which a beneficiary could not escape, unless the officers, for reasons satisfactory to themselves, saw fit to readmit or reinstate him. No one can fairly draw an inference from this course of proceeding that there was any waiver by the defendant of the provision requiring prompt payment of assessments.                    *Judgment on the verdict.*