THOMPSON *v.* FIDELITY MUTUAL LIFE INS. CO.

(*Jackson.* April Term, 1906.)

1. **LIFE INSURANCE.** **Mere indulgence in payment of premium does not waive forfeiture for nonpayment.**

Where a policy of insurance contains a stipulation that nonpayment of premiums, when due, shall work a forfeiture of the policy, mere voluntary indulgence in the payment of particular premiums, without agreement for like indulgence in respect of future premiums or a course of dealing implying such an agreement, does not constitute a waiver of forfeiture for failure to pay premiums when due. (*Post, pp.* 564, 565.)

Cases cited and approved: Thompson v. Ins. Co., 104 U. S., 252; Easley v. Assn., 91 Va., 169; Crossman v. Assn., 143 Mass., 435.

2. **SAME.** **Same.** **Case in judgment.**

The policy sued on provided that it should become null and void unless premiums thereon should be paid when due. Between the date of its issuance and the insured's death, thirty-six premiums had matured on the policy. Seven of these were accepted after they were due, and two of the seven were accepted after the insured had executed a certificate of good health. Of the remaining five, two were forwarded by mail on the day they became due, leaving only three that were unconditionally accepted after maturity. The revival contracts recited that the policy had become forfeited for nonpayment of premiums, and contained an express agreement that the insured should pay his future premiums promptly. The insured died on January 14th, being in default of the payment of the premium due on December 20th preceding.

*Held:* That such facts were insufficient to establish an habitual course of dealing, justifying insured in believing that the insurer would not insist on a forfeiture of the policy for failure to pay premiums at maturity. (*Post, pp.* 562-566.)

Cases cited and approved: Ins. Co. v. Hyde, 101 Tenn., 396; Ins. Co. v. Eggleston, 96 U. S., 572; Equitable Ass. Soc. v. McElroy, 83 Fed., 631.

**3. SAME. Payment of premiums after death.**

A course of dealing between insurer and insured whereby the insurer has accepted overdue premiums when the insured was in good health, does not bind it to accept premiums for the purpose of avoiding a forfeiture where they are not tendered until after the insured's death. (*Post, pp.* 566-570.)

Cases cited and approved: Crossman v. Assn., 143 Mass., 436; Ins. Co. v. Unsell, 144 U. S., 439; Assn. v. Miller, 85 Ky., 88; Thompson v. Ins. Co., 104 U. S., 257, 258; Klein v. Ins. Co., 104 U. S., 88; Carpenter v. Association, 68 Iowa, 453; Carlson v. Supreme Council, 115 Cal., 466, 474; Miller v. Union Central Ins. Co., 110 Ill., 104; Want v. Blunt, 12 East. Rep., 183; Pritchard v. Association, 3 C. B., 622.

**4. SAME. Premiums payable in installments—condition subsequent.**

Where an insurance policy provides that it shall become null and void for nonpayment of premiums at maturity, a failure to pay any installment when due works a forfeiture of the policy, even though the stipulation be construed as a condition subsequent. (*Post, pp.* 570, 571.)

Cases cited and approved: Ressler v. Ins. Co., 110 Tenn., 411; Ins. Co. v. Lewis, 187 U. S., 335; Cline v. Ins. Co., 104 U. S., 88; Ins. Co. v. Statham, 93 U. S., 24.

**5. SAME. Incontestable for causes other than nonpayment of premiums.**

Where a policy provided that it should be incontestable after three years if the premiums should be paid when due, such clause should be construed to mean that the policy should be incontestable for causes other than the nonpayment of premiums. (*Post, p.* 571.)

Thompson v. Ins. Co.

**6. SAME.** Policy forfeitable for nonpayment of quarterly premium is not extended by provision for deduction from amount of policy of balance due for current year.

Where an insurance policy provides for the payment of premiums in quarterly installments upon certain designated dates, and that it shall be forfeited for failure of the insured to pay the premiums when due, the insured will be held strictly to the performance of such condition, and the policy becomes void upon nonpayment as stipulated; nor is such result changed by a prior provision that, if the premiums are paid when due, the insurer will pay to the representative of the insured the face value of the policy "less the balance of the dues for the current year of the death of the insured." (*Post, pp.* 571-579.)

Cases cited and approved: McConnell v. Assur. Soc., 92 Fed., 769; Howard v. Continental Ins. Co., 48 Cal., 229; Werner v. Ins. Co., 11 Daly (N. Y.), 176; Ins. Co. v. Sheridan, 8 H. L. Cas., 745.

**7. SAME.** No penalty where there is no liability.

A party not entitled to recover upon a policy of life insurance cannot recover the penalty prescribed by the statute for the insurance company's withholding the amount alleged to be due thereon. (*Post, p.* 579.)

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.— F. H. HEISKELL, Chancellor.

TURLEY & TURLEY, for Thompson.

R. LEE BARTELS, for Insurance Co.

MR. JUSTICE WILKES delivered the opinion of the Court.

This is a suit to collect a life insurance policy. The bill upon its face shows that the insured died in default of payment of the last premium. The complainant seeks to recover upon two theories, one that there was a course of dealing between the insured and the company by which the insured was allowed to pay his premiums after they became due, and in consequence of this course of dealing complainant was led to believe that he might make such payments within thirty days after they became due.

The last payment which was allowed to go by default was due December 30, 1904. The insured was then absent from his home at Memphis, and in his last sickness; but of this the company had no notice.

The company mailed notice in due time and in the usual way of the maturity of this premium, but it was never received by Thompson or his wife, or any one else for him, so far as the record shows.

The policy provides as follows:

"The Fidelity Mutual Life Association . . . in consideration of the application for this policy, which is made a part hereof . . . and the payment to said association of seven and eighty-three one-hundredths dollars ($7.83) upon the thirtieth days of the months of March, June, September, and December in every year, for a period of twenty years from March 30, 1896, and thereafter in the event of the continuance of this con-

tract, the payment of renewal premiums on the date aforesaid . . . does hereby receive William Y. Thompson, of Memphis, Tennessee, as a member of said association, and issues this policy of insurance and hereby promises to pay the sum of twenty-five hundred dollars to the administrators, executors, or assigns of said member within ninety days after proof of death," etc. . . . "less the balance of the dues for the current year of the death of the insured, and any indebtedness of the member to said association, subject, however, to all the requirements hereafter stated, and the conditions herein indorsed, which are hereby referred to and made a material part of this contract.

"(2) Provided, any moneys required to be paid under this policy, during the continuance of this contract, must be actually paid when due to said association; . . . otherwise, this policy shall be *ipso facto* null and void, and all moneys paid thereon shall be forfeited to the said association."

The policy was issued on the 30th of March, 1896, and delivered to the insured on April 3, 1896, at which time he paid the initial premium. The insured died on the 14th of January, 1905, in default in the payment of the premium due December 30, 1904. On a day between January 20 and 23, 1905, a tender of the premium due December 30, 1904, was made to the Nashville office of the defendant. At that time the company was not aware that Thompson had died, and that fact was not com-

municated to it at the time of tender. The agent in charge at the Nashville office, advised the party. making the tender that it could not be accepted because it was overdue, unless accompanied by a certificate of good health.

At the time the policy was issued, the insurer had an office in Memphis, but during the summer of 1900, this office was abolished, and the insured was instructed to pay his premiums by mail to the Nashville office. The subsequent premiums were paid to the Nashville office.

There were thirty-six premiums due upon the policy between the date of its issuance and the death of the insured. Of these, seven were accepted after they were due. Of these seven, two were accepted only when the insured had executed a certificate of good health. Of the five remaining premiums, two were forwarded by mail to the Nashville office on the day they became due, thus leaving only three premiums that were paid and accepted after due, unconditionally. Of these three premiums one was paid one day overdue, one two days overdue, and one sent by mail to the home office one day after due, and received five days after due.

The evidence shows that the certificates of health executed by Thompson and the revival contracts recited that the policy had become forfeited for nonpayment of premiums at maturity, and there was an express agreement on the part of the insured that he was to pay his future premiums promptly. The correspondence

that passed between the cashier of the Nashville office and the insured in reference to the premium due December 30, 1900, shows that it was necessary, in order to protect Thompson's insurance, that the cashier should pay his premiums on the due date, out of her own funds. The subsequent correspondence between the cashier of the same officer and Thompson, in reference to the premium due June 30, 1901, made known to Thompson that his policy had been forfeited because his premium was not paid promptly, and that before he could be reinstated it was necessary for him to execute a health certificate.

We cannot, in view of the evidence in regard to the payment of premiums which we find in the record, conclude that there was an habitual course of dealing between the parties which would justify the insured in believing that the company would not insist upon a forfeiture of the policy if he failed to pay his premiums when they fell due, so as to bring the case within the operation of the rule laid down in *Insurance Co.* v. *Hyde,* 101 Tenn., 396, 48 S. W., 968; *Insurance Co.* v. *Eggleston,* 96 U. S., 572, 24 L. Ed., 841.

The doctrine is there laid down, that any agreement, declaration, or course of dealing on the part of an insurance company which leads the insured honestly to believe that by conformity thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting

upon a forfeiture, though it may be claimed under the express letter of the contract.

As was said by the court in case of *Equitable Assur. Soc.* v. *McElroy,* 83 Fed., 631, 28 C. C. A., 365:

"The course of dealing between the insured and the insurer must be such as to justify the insured in believing that the company will not insist upon a forfeiture of the contract for his failure to pay his future premiums when due; that the insured does believe this and that he acts on this belief. Otherwise, there is no estoppel on the part of the insurer to insist upon prompt payment and forfeiture for failure to pay ad diem."

The rule is laid down by Mr. Bacon, Mr. Joyce and other text-writers that the "course of dealing" between the insured and the insurer as to accepting overdue premiums must amount to a custom or habit in order to estop the insurer from insisting on forfeiture for the failure to pay a subsequent premium *ad diem;* and that not only must it be shown that the premiums were habitually received after they were due, but that the insurer intended to waive the prompt payment of future premiums, or that the assured, as a reasonable man, was led to believe by its action that the insurer had waived the condition of forfeiture. Bacon, vol. 2, sec. 431; Joyce, vol. 2, sec. 1368; Vance, p. 353; *Crossman* v. *Association,* 143 Mass., 435, 9 N. E., 753.

That mere indulgencies in the payment of premiums do not constitute a waiver of the condition of forfeiture for failure to pay premiums when due. *Thompson* v.

*Insurance Co.,* 104 U. S., 252, 26 L. Ed., 765; *Easley* v. *Association,* 91 Va., 169, 21 S. E., 235.

In the case of *Thompson* v. *Insurance Co.,* supra, the claim made was similar to the contention made in this case. Justice Bradley said:

"If the permission to pay a premium or premiums after maturity was a matter of indulgence on the part of the company, it cannot be justly construed as a permanent waiver of the clause of forfeiture, or implying an agreement to continue the same indulgence for time to come. As long as the insured continued in good health it is not surprising and should not be drawn to the company's prejudice, that it was willing to accept the premium after maturity, and waive the forfeiture which might have been insisted upon. This was for the mutual benefit of themselves and the insured at the time, and in each instance in which it happened, it had respect only to that particular instance without involving any waiver in reference to future payments. The insured had no right, without some agreement to that effect, to rest on such voluntary indulgence shown on one occasion or a number of occasions, as a ground for claiming it on all occasions. If it were otherwise, an insurance company could never waive a forfeiture on occasion of a particular lapse without endangering its right to enforce it on occasion of a subsequent lapse."

Under the above authorities, before complainant can recover in this case, she must show:

(1) That the course of dealing between the insurer and the insured, in reference to the acceptance of overdue premiums, amounted to a custom or a habit.

(2) That by reason of this course of dealing, the insured was justified in believing that the company would not insist upon a forfeiture for his failure to pay his subsequent premiums *ad diem.*

(3) That the insured did actually believe that he could postpone the payment of his future premiums after maturity without the risk of a forfeiture.

(4) That the insured acted upon this belief in this instance, and that by reason thereof, did not pay the premium due December 30, 1904, at its maturity.

But this rule does not in any event apply, unless the payment is made and accepted during the life of the insured, so that we consider this course of dealing as really unimportant.

A permission to pay a premium after due date during the life and good health of the insured is not equivalent to a permission to pay after his death. It is well settled that a course of dealing between the parties under which the insurer accepted overdue premiums when the insured was in good health, will not give his representative or himself the right to pay or tender his premiums after maturity, and he is in a bad state of health, or had died. Bacon, vol. 22, sec. 431; *Crossman* v. *Association,* 143 Mass., 436, 9 N. E., 753-755; *Insurance Co.* v. *Unsell,* 144 U. S., 439, 12 Sup. Ct., 671, 36 L. Ed., 496; *Association* v. *Miller,* 85 Ky., 88, 2 S. W., 900.

The reason of this is, there has been an increase in the risk or hazard. An insurer might be willing to accept an overdue premium and reinstate an insured when his condition of health is the same as when the policy was originally issued, but it cannot be argued from this that he should be required to reinsure or reinstate the same person when he was or is *in extremis*. The course of dealing, if any, was to accept the overdue premiums, from a live man, not a dead one.

At the time the tender was made in this case Thompson was dead.

As bearing somewhat upon this feature of the case, it had been held that illness of the insured is no excuse for his not paying his premium when due. The law and his contract require him to make provision for meeting his premiums when due, and if he fails to do this, he cannot be heard to complain by saying that he was physically unable to attend to his business. *Thompson* v. *Insurance Co.,* 104 U. S., 257, 258, 26 L. Ed., 765; *Klein* v. *Insurance Co.,* 104 U. S., 88, 26 L. Ed., 662; *Carpenter* v. *Association,* 68 Iowa, 453, 27 N. W., 456, 56 Am. Rep., 855.

In the case of *Want* v. *Blunt,* 12 East. Rep., 183, the contract provided that upon payment of premiums on a certain day, or within fifteen days thereafter, that upon the death of the insured the company would pay to his widow the amount named in the policy. The insured died in default of the payment of his premium, but it was tendered the company within fifteen days

after his death.. The court held that the payment was not made in time; that the condition in the policy permitting the insured to pay within fifteen days after the due date of the premium meant, should pay "within fifteen days after due date, during the life of the insured."

Said the court: "This contract of insurance must be construed according to the meaning of the parties expressed in the deed. . . . The risk insured against is W.'s death. The duration of the insurance is so long as he continues to make his payments, but the insurance is not to be void if paid within fifteen days after due. The question to be determined is whether at the death of the insured the policy had expired. The insurance is for a quarter of a year, and so on, from quarter to quarter, contingent upon the payment of premiums in advance. The death of the insured happened after one of the quarters had ended and when a new one had begun, but no payment of premium had been made as a consideration for the insurance for the new quarter. As the protection offered was only up to the beginning of a new quarter, its continuance thereof being dependent upon the payment of another quarter's premium, there was no insurance upon his life at the time of his death, hence the death happened during a period not covered by the policy. The payment of a premium for another quarter was equivalent to making a new assurance, though under a former policy. The frame

of this policy shows that the premium must be paid during the life of the assured."

This case was followed by *Pritchard* v. *Association,* 3. C. B., 622. Said Justice Willes:

"The provision for revival upon the good health of the insured assumes that the subject upon which the insurance is to attach is a living person, otherwise, the stipulation would be absurd. The very foundation of a life policy is that it is a contract for the payment of a certain sum upon the future death of a person then in being, in consideration of the present payment of the premium. The renewals or revivals of the contract, like the original, are clearly only for future assurance on a living person."

In the policy in the present case, it is provided that the insurance shall not be binding unless delivered during the lifetime of the insured; the provision in the certificate of health and revival contract that the insured should be in good health also contemplated his being alive at the time.

In *Carlson* v. *Supreme Council,* 115 Cal., 466, 474, .47 Pac., 375, 35 L. R. A., 643, the by-laws of the benefit association provided that if the insured died in default of assessments or dues, his beneficiaries would have no rights under the contract. There was a further provision in the by-laws that if unpaid dues and assessments were paid within sixty days, the assured would be reinstated. After default, but before the expiration of the sixty days thereafter, the insured died, and his benefic-

iaries tendered the amount of his unpaid assessments and dues. The tender was refused and suit brought upon the beneficiary's certificate. The court held that before the policy was revived, and while the assured was in default, there was no insurance, and that the insured took the risk of losing his insurance if he died without having paid his premiums; that the meaning of the contract giving the assured sixty days after the date of his assessment to pay was that he must pay within that time and during his life. Said the court:

"The contract of insurance becomes complete at the death of the insured. The liability or nonliability becomes fixed by that event. The right to recover depends upon the conditions existing at the moment of the insured's death."

To the same effect is *Miller* v. *Union Cent. Ins. Co.,* 110 Ill., 104.

"Payment after death creates no contract. There is no consideration for the insurance." Bliss on Insurance, sec. 316.

"There can be no valid insurance of the life of a dead man." Bliss on Insurance, sec. 355.

Complainant claims that the condition of the policy requiring payment of premium *ad diem,* or on failure the policy to become forfeited, was a condition subsequent, and no forfeiture could be claimed without some affirmative act on the part of the insurer. It is immaterial whether the condition of precedent or subsequent failure to pay when due in itself worked a forfeiture.

The parties have so agreed, and the courts will enforce the agreement. *Ressler* v. *Insurance Co.,* 110 Tenn., 411, 75 S. W., 735; *Iowa Ins. Co.* v. *Lewis,* 187 U. S., 335, 23 Sup. Ct., 126, 47 L. Ed., 204.

So, where the annual premium is payable in installments, a failure to pay any installment works a forfeiture. *Klein* v. *Insurance Co.,* 104 U. S., 88, 26 L. Ed., 662.

Time is of the essence of the contract, and even though the condition be construed as a condition subsequent, failure to pay when due forfeits the contract. *Insurance Co.* v. *Statham,* 93 U. S., 24, 23 L. Ed., 789.

The policy provides that after three years, if the payments required shall have been made when due, the policy shall be incontestable. This only means that it shall be incontestable for causes other than the nonpayment of premiums, but does not in any wise relieve the insured from the payment of his premiums, but on the contrary expressly stipulates that they shall be kept up and paid when due, during the twenty years' life of the policy.

An amended bill was filed under which it was, in substance, contended that under the terms of the policy when properly construed, no forfeiture would accompany nonpayment of any premium at maturity.

The contract of insurance provides that if the premiums payable on the 30th of March, June, September, and December of every year, are paid when due, the insurer will pay to the representative of the insured the

face value of the policy "less the balance of the dues for the current year of the death of the insured, and any indebtedness of the member to said association, subject, however, to all the requirements hereinafter stated," etc.

This provision is followed by a provision for forfeiture upon the failure of the insured to pay, when due, any moneys required to be paid under the policy.

The contention is based upon a construction of the terms of the policy; and it is insisted that under them the company had absolute right to collect all of the payments due on the policy within any current year from its anniversary, notwithstanding the assured might die during the year and before some of the installments fell due, and having this right it was bound to give to the insured a corresponding right to insurance for the whole of the current year.

This amended bill was demurred to and the demurrer sustained; and this is assigned as error.

We think this contention cannot be maintained, as made by complainant in her amended bill.

The contract rightfully construed is that upon the death of the insured, while the policy is in an existing contract, i. e., when the premiums are regularly paid when due, the insurer shall have the right to deduct any accruing payment for the current year not then due. In other words the right to deduct from the face of the policy the installments not due attaches only where the insured regularly meets his payments at maturity,

and dies before all of the payments for the current year become due.

In case of a default of any moneys due under the contract, it *ipso facto* becomes null and void.

But it is said that the contract of insurance is a contract for annual insurance, and that the right of the insured and insurer must be determined from the status of the parties at an anniversary of the policy.

Concede that it is an annual insurance, still, it is an annual insurance with the payments to be made quarterly. It is expressly provided that a failure to make any payment when due will work a forfeiture; hence the annual insurance is subject to the voluntary default of the insured.

The privilege of paying the annual premium in quarterly installments was evidently for the convenience of the insured. Ordinarily, these premiums are payable as a whole in advance for the term of one year. The failure to pay the whole of the premium in such a case works a forfeiture in the event that it is so provided. In this instance the result is the same, upon the failure of the insured to meet his quarterly payments when due. At the end of any quarter there is no obligation imposed upon the insured to pay the next succeeding quarter; his failure to pay works a forfeiture of his contract, but the company cannot compel him to pay the remaining installments. In the event of the death of the insured, before the end of the first quarter, or any succeeding quarter, if he has paid his premiums when due,

his representatives are entitled to collect his insurance. In the absence of any provision permitting the company to deduct from the face value the remaining installments for the year, the insured would receive the face value of the policy, having paid one-fourth, two-fourths, etc., as the case may be, of the annual premium. In order to avoid this, the company said to the insured, "You pay your premium in installments; if you meet those installments regularly when due and die before all of the installments have become due, we will pay the face value of the policy," "less any unpaid portion of the yearly payments." In other words, the company reserves the right to deduct the dues for the current year accruing but not due. Thus, in the event of a loss, while the contract is in force, to preserve to itself the right to collect the unpaid portion of the annual premium. In the case of a default in the payment of any installment when due, the policy is no longer an existing contract, and the insurer has no right to collect the remaining installments.

As was said by the court in the case of *McConnell* v. *Assur. Soc.*, 92 Fed., 769, 34 C. C. A., 663, where the court was called upon to construe a provision similar to the one in question: "It is an annual policy on which the premium is payable by quarterly installments leaving the insured at liberty to drop it at any quarter, and imposing no liability on the part of the company, unless the quarterly payment is made, when due. If, however, the insured died at the end of the first quarter

Thompson v. Ins. Co.

of the current year, the insurance company receives only one-quarter of the annual premium instead of the whole. It has insured the deceased for a year, subject to his voluntary default. He has died and the policy is earned. He should pay the whole year's premium therefor, but has only paid one-quarter's premium. To meet this injustice, the proviso was introduced that if the insured should happen to die before the whole of said quarterly payments should have become due then the company will be entitled to deduct the premiums for all subsequent quarters of that current year from the amount of the policy. That proviso is not meant to apply to the case of a defaulted payment, but only to a case where the payments are regularly made as they become due, and where all the installments have not become due on the death of the insured. In this case, there was a failure to pay a quarterly installment on the day fixed. As a consequence the policy became forfeited."

The above case was based upon the authority of *Insurance Co.* v. *Sheridan,* 8 H. L. Cas., 745. In that case, the policy contained a provision that the annual premium for the whole term was £33 payable by quarterly installments. If the insured should die, having paid his premiums when due, the policy would be payable for the sum insured. "But if the insured died before the whole of the quarterly payments shall have become payable for the year, the directors may deduct from the sum insured the whole of the premium for that year."

The insured died after the third installment became due, but before it was paid.

The house of lords, through Lord Campbell, held the contract to be an insurance from quarter to quarter, but that the payment of the quarterly installments was a condition precedent to the right to continue the policy as an existing contract. Lord Cramworth, while agreeing with Lord Campbell as to the result reached, was of the opinion that the insurance was an annual insurance with the payments due quarterly, and the failure to pay any installment when due worked a forfeiture of the contract. Said Cramworth: "The proviso (referring to the clause giving the insurer the right to deduct unpaid portions of premiums) is not meant to apply to the cause of a default in payment when due, but to a case where the regular payments had been made as they became due, but where all had not become due."

The case of *Howard* v. *Continental Ins. Co.*, 48 Cal., 229, is also in point. There the policy provided for the payment of an annual premium in advance, or if the insured saw fit twice yearly or thrice yearly in advance. Further, that if the insured should die, to pay the face value after deducting any balance of the year's premium. There was a provision for forfeiture for failure to pay when due any moneys required to be paid under the policy. The insured elected to pay his premium thrice yearly, paying one-third upon the delivery of the policy. He died after the second installment became due and

remained unpaid.  In a suit upon the policy, in which
the claim was made that the provision giving the insurer
the right "to deduct the balance of the dues for the cur-
rent year" extended to the insured credit for the pay-
ment of his other installments until the last installment
fell due, the court held:  "First, the payment of the
·installment did not extend to the insured credit for the
other installments until the end of the year, but that
they should have been paid when due." Further, "less the
balance for dues for the current year" did not have
the effect of extending such credit, but that the mean-
ing of those words was that the company could deduct
any installment not due at the death of the insured, not
only that the company was compelled to pay the face of
the policy and deduct therefrom an overdue installment.
The court said:  "We agree that it was intended in
case of the death of the insured before one or more
installments became due that the company should deduct
from the amount insured the balance of the  current
year's premium.  But we do not think as a consequence
of this right, reserved by the insurer, the insured was
relieved of the necessity of paying any installment when
it was agreed it should be paid.  The company was
authorized to deduct any installment not due at death;
but was not compelled to pay the  sum insured, with the
right to deduct an installment overdue when death oc-
curred."

Thus construing the several clauses, effect is given

116 Tenn.—37

to all stipulations of the contract; but to sustain the view of respondent, it would be necessary to ignore the portion of the policy which fixes the thrice yearly payments, and making the policy read that the payments be made one-third at the beginning of the year. Primarily, the whole of the annual premium was payable in advance. The consideration for the policy was the payment of the whole premium; if not paid, the policy to lapse. But the option was given the insured to pay thrice yearly in advance. In the first case, there was no obligation to pay the sum insured unless the thrice yearly payments were made when due.

As said by the court in *Werner* v. *Insurance Co.,* 11 Daly (N. Y.), 176, complainant loses sight of the manner in which the payments are to be made, that is, upon the days named in the policy. Certainly the quarterly payments were due on the days named, the provision for forfeiture provide that any moneys, required to be paid under the policy, must be actually paid, when due, otherwise the policy becomes void. Confessedly, there was a payment due on the policy December 30, 1904, but no payment made. The insured died fifteen days in default, and no tender until after his death. Under the plain terms of the policy it had ceased to be an existing contract.

The fallacy in the contention of counsel for complainant lies in his claim that the insured was entitled to one year's insurance from March, 1904 (anniversary of policy), absolutely. Whereas, the contract is that

he is entitled to such insurance only upon the condition that he pays his premiums when due.

Mr. Joyce says: "If the stipulation is that the annual premium shall be paid quarterly in advance upon specified days, or the policy shall be forfeited, the party will be held strictly to the performance of such a condition, and the contract becomes terminated by a nonpayment as stipulated. And this is so even though other portions of the contract refer to 'annual insurance' or 'yearly premium.' And though the policy provides that if all of the quarterly payments have not been made when the insured dies, the company may deduct the whole unpaid balance of that year's premium from the amount of the policy." Volume 2, sec. 1108.

This is a hard case, but by no means an unusual one; where a party has failed to comply with the requirements of his policy, and death coming unexpectedly, he has lost all benefits under it by its plain provisions.

Complainant insisted upon a jury trial in the court below, but did not make demand for same according to the rule of the court. Moreover, there does not appear to be any disputed question of fact material to the decision of the case involved in it.

It is said that complainant is entitled to recover the penalty prescribed by Acts 1901, p. 248, c. 141.

Inasmuch as complainant, in our view of the case, is not entitled to recover the insurance, it follows, as a matter of course, she cannot recover any penalty for withholding it.

The decree of the court below is affirmed, with costs.