MAYME B. ROBERTS v. FIDELITY MUTUAL LIFE INS. CO.

Eastern Section. June 15, 1929.

Petition for Certiorari denied by Supreme Court, October 19, 1929.

192

A. Y. Burrows, of Knoxville, for appellant.
Frantz, McConnell & Seymour, of Knoxville, for appellee.

HEISKELL, J. This is a suit upon a life insurance policy issued by the defendant to Carl R. Roberts on March 20, 1920. The defense is that the policy lapsed or was forfeited by reason of the non-payment of the premium falling due March 20, 1927, within the time provided in the policy.

The defendant admitted a surrender value of $2273 after deducting $1000 borrowed by the insured, and paid said amount into court. The Chancellor held that this was the extent of defendant's liability and dismissed complainant's bill and she has appealed.

The policy provided for payment of $16,000 if insured lived until 1951. This is admitted, also that complainant is the beneficiary and that Roberts died August 3, 1927. The bill alleges that seven annual premiums had been paid: that by reason of the custom of dealing between the insured and the company through its agents, the policy had not been forfeited and that there was due thereon, the sum of $12,640 from which should be deducted $1000 borrowed.

A great deal of space is taken up in the brief of appellant discussing the action of the Chancellor in sustaining exceptions to testimony of complainant. It is difficult if not impossible, to make out from the record what testimony was covered by the exceptions and excluded, but however this may be, we consider it immaterial because if the whole testimony be admitted, yet the material facts are made out by a stipulation in lieu of defendant's evidence so as to constitute a preponderance of evidence.

Some letters in this stipulation were excluded; eliminating these and certain immaterial portions the stipulation is as follows:

"On March 20, 1920, pursuant to an application made on February 10, 1920, the respondent, The Fidelity Mutual Life Insurance Company of Philadelphia, Pennsylvania, issued to Carl R. Roberts of Knoxville, Tennessee, a certain life insurance

policy, a true copy of which, together with the application for same, is hereto attached, as Exhibit I to this stipulation. The first annual premium on said policy receipted for in the face thereof was duly paid.

"The second annual premium due March 20, 1921, was settled by a note due June 20, 1921. This note not having been paid at maturity and containing a provision for the lapsing of the policy in case of nonpayment of the note and the policy having lapsed for such nonpayment a written application was made by said Carl R. Roberts to the said respondent, Insurance Company, for reinstatement thereof. A photostatic copy of said application is hereto attached, marked Exhibit 2. The company did not require any physical examination by a physician as evidencing good health at that time and the application was accepted and the policy reinstated.

"The premium due on said policy on March 20, 1922, was duly paid by the said Roberts.

"The premium due on said policy on March 20, 1923 was settled by note due June 20, 1923. This note was not paid when due as a result of which the policy again lapsed according to its terms. On July 9, 1923, the said Carl R. Roberts made a written application for reinstatement thereof, a photostatic copy of which is hereto attached, marked Exhibit No. 3. This application was accepted and the policy reinstated, likewise without physical examination by a physician. However, in making settlement a note was given for a part of the premium which fell due on December 20, 1923, and this note not being paid the policy again lapsed. Under date of January 15, 1924, the said Carl R. Roberts again made written application for reinstatement, tendering the settlement of the balance of the premium. This written application or a photostatic copy thereof is herewith attached as Exhibit 4 to this stipulation and made a part thereof. This application was accepted by the company without examination by a physician and the policy was again reinstated.

"The premium due on March 20, 1924, was paid without default.

"The premium due on March 20, 1925, was paid without default.

"When the premium became due on March 20, 1926, the same was settled by cash for part, together with a note for $300 for the balance, due June 20, 1926. This note not having been paid at maturity the policy again lapsed. Under date of July 9, 1926, the said Carl R. Roberts made application for reinstate-

ment, tendering settlement for the balance of the premium. The written application for such reinstatement is herewith attached, marked Exhibit 5 to this stipulation and made a part thereof. This application was accepted, together with the settlement for balance of premium and the policy again reinstated without requiring an examination by a physician. Under the terms of the policy there became, and was, due on March 20, 1927, a premium charge of $496.80 which, however, by the terms of said policy, was entitled to be reduced by a dividend amounting to $108.64, which made the net premium due from said Roberts on said date $388.16. That is to say, the said Roberts had the right under his policy to take credit on said premium for that amount but in the event he failed to exercise said right the same would be applied to the purchase of participating paid life insurance as provided in said policy. On, to-wit, February 20, 1927, a written notice was duly sent to Carl R. Roberts notifying him of the fact that said premium would be due on said date, to-wit, March 20, 1927, giving him the net balance thereof in case he elected to apply the dividend thereto and notifying him of the fact that if said amount was not paid on said date or within thirty-one days of grace thereafter his said policy would lapse and become void. This was a notice similar to those sent him upon all previous occasions when premiums fell due. ᐟ No reply was made to said notice and the premium was not paid.

"On, to-wit, April 14, 1927, another written notice was sent to the said Carl R. Roberts from its office in Nashville, Tennessee, calling his attention specifically to the fact that said premium was due and unpaid. No reply was made by him to this notice and the premium still remained unpaid.

"On, to-wit, April 29, 1917, respondent through its Nashville office, again wrote to the said Carl R. Roberts, notifying him of the fact that said premium had not been paid when due or within thirty-one (31) days thereafter and that the said policy had lapsed and enclosing to him a blank form for application for reinstatement if he desired to apply for the reinstatement of said policy. This letter was from their Nashville office written by the Insurance Company's cashier and is as follows:

"April 29, 1927.

"IN RE: 304204—nonpayment of premium
"Mr. Carl R. Roberts,
"512-14 Union Avenue,
"Knoxville, Tennessee.
"Dear Sir:

"The thirty-one days of grace allowed for the payment of the net annual premium of $388.16 due March 20, 1927 on

your policy of the above number have expired and settlement has not been received at this office. The policy, therefore, is lapsed and it will be necessary when submitting settlement that you accompany it with the enclosed application for reinstatement properly executed for Head office approval.

"If the application for reinstatement is approved by the Company and settlement accepted, policy will be restored to force and proper acknowledgment made.

"Please let us hear from you relative to this matter.

"Yours very truly,

"Gertrude E. Prince,"

"Cashier. N."

N.

Enc.

"The said Carl R. Roberts thereupon upon the 30th day of April, 1927, executed said application and returned it to said Nashville office to be by it forwarded to the Home Office of said respondent, together with a check for $88.16 and a note for $303 dated March 5, 1927, and due June 20, 1927. A photostatic copy of said application is attached as Exhibit 7 hereto. A photostatic copy of said check and note are herewith attached as Exhibits 8 and 9 to this stipulation and made a part thereof, the said check and note covering tendered settlement for said premium. The application for reinstatement, as in other cases, contained the following provisions:

" 'It is further agreed that any settlement which may accompany this application or be submitted in connection therewith shall be held subject to the order and at the risk of the payor (checks, drafts, money orders and notes to be held as received) pending final action hereon and that such settlements shall be returned to the payor if this application be not approved.'

"This application for reinstatement and tendered settlement was received by the insurance company and upon the same being submitted to its proper officer he determined that in view of the time which had elapsed since the physical examination when the policy was issued and the time of this application and in view of the previous record of the insured that before passing upon this application he desired a physical examination of the said Carl R. Roberts by a reputable physician and a report thereon. He accordingly wrote to the said Carl R. Roberts under date of May 16, 1927, as follows:

196

"May 16, 1927.

"In Re: #304204
"Mr. Carl R. Roberts,
"512 Union Avenue,
"Knoxville, Tenn.
"Dear Mr. Roberts:

"Application for reinstatement executed by you on April 30th, has been forwarded to us by our representative in Nashville together with cash and note remittance to cover the annual premium of March 20th.

"Before proceeding with the final consideration of this application, it is necessary that we secure customary medical certificate for the execution of which we would suggest you get in touch with Dr. Kyle C. Copenhaver, 605 Burwell Bldg., Knoxville, who will, we know, be glad to assist you. Regular fee of $2 should be paid by you at the time the examination is made.

"We hope you will call at Dr. Copenhaver's office promptly, because we are anxious to take action in the matter of revival, but cannot do so until we have complete information in hand. We have written to Dr. Copenhaver today.

"Yours very truly,"

"REINSTATEMENT DEPARTMENT,

"H. Shackleton,

NH "By F. S. McCullough."

"May 31, 1927.

"In re: #304204,
"Mr. Carl R. Roberts,
"512 Union Avenue,
"Knoxville, Tenn.

"Dear Mr. Roberts:

"We have before us at this time the papers in connection with your policy above numbered, and we are sorry to note that up to this time we have not received medical certificate, without which, we cannot proceed.

"If you have not already gotten in touch with Dr. Copenhaver in order that the examination might be made, we urge that you do so promptly, as no action whatever can be taken until this certificate is in hand.

"Your prompt attention and cooperation in this matter will be greatly appreciated.

"The fee for this examination should be paid by you at the time of examination.

"Upon receipt of Dr. Copenhaver's report the matter will have our prompt attention. Meanwhile, application for reinstatement and settlement are held at this office without action.

"Yours very truly,

"REINSTATEMENT DEPARTMENT,

LHT "By F. S. McCullough."

"This letter was not replied to by Mr. Roberts and no examination was had or applied for.

"On, to-wit, June 15, 1927, the respondent again wrote to Mr. Roberts, urging him to have said examination made and a photostatic copy of said letter is hereto attached as Exhibit 14 to this stipulation and is made a part thereof. Said letter was as follows:

"June 15, 1927.

"In re: #304204—394173,

"Mr. Carl R. Roberts,

"512 Union Avenue,

"Knoxville, Tenn.

"Dear Sir:

"We are writing once more relative to policy 304204 which lapsed from regular standing because of the non-payment of net annual premium due March 20, 1927, and on which we are holding at this office, application for reinstatement, check for $88.16 and premium note for $303, waiting receipt of medical certificate.

"Kindly get in touch with Dr. Copenhaver promptly as we are anxious to proceed with the matter of reinstatement in connection with this case, but can do nothing until medical report is in hand. Will you please attend to this matter at your earliest opportunity?

"Policy 394173 is also lapsed at this time because net annual premium due April 7th was not paid within the grace period. We enclose herewith application for reinstatement which we trust you will promptly execute and return, together with check, draft or money order for $50.27 covering unpaid premium with interest to date. Of course, if you cannot take care of the entire amount due at this time, we would be willing to accept part cash and note settlement in payment thereof.

"Please do not delay taking action in connection with these cases. Now is the time to do so, next week, or next month, you might not be insurable.

"Yours very truly,

"REINSTATEMENT DEPARTMENT,

LHT "By F. S. McCullough."

"The said Roberts made no reply to this letter and did not secure or apply for physical examination as requested.

"On July 1, 1927 the respondent again wrote to Carl R. Roberts again urging action with respect to this matter, as follows:

"July 1, 1927.

"In re: #204204—394173,

"Mr. Carl R. Roberts,

"512 Union Avenue,

"Knoxville, Tenn.

"Dear Sir:

"Referring to correspondence relative to your policies above numbered we regret to observe that up to date no further action has been taken.

"We are waiting receipt of medical certificate and some sort of settlement in connection with premium note made payable June 20th, $303 in connection with 304204, and an application for reinstatement and check, draft, or money order for $50.27 in connection with policy 394173.

"Application for reinstatement under 304204 and your check for $88.16 are held at this office awaiting completion of papers.

"Will you kindly give this matter your early attention? We cannot too strongly urge upon you the importance of prompt action in matters of this kind.

"Policies at the present time are in a lapsed condition.

"Very truly yours,

"REINSTATEMENT DEPARTMENT,

LHT "By F. S. McCullough."

"No reply was made by said Roberts and no examination was had and none applied for as suggested therein.

"In the meantime the note falling due June 20, 1927, for $303 was not paid for the reason that it and the check were being held pending the examination demanded by the company. No offer to pay the note was made by said Roberts and no demand was made therefor by the company.

"The said check and the said note were held by the company pending the final consideration of said application.

"The matter remained in this attitude without further action by either party until August 3, 1927, when the said Carl R. Roberts died.

"Upon being notified of the death of said Roberts the said company wrote to the complainant, and a photostatic copy of its letter being dated August 11, 1927, is hereunto attached as Exhibit 16 hereto and made a part hereof.

"The company tendered its check for $2273 admitted by it to be due and returned to complainant the note and premium check which it had been holding. These tenders were not accepted and suit having been brought the tender was made into the registry of the court where it is now held. .

"The respondent company makes no question with respect to proofs of death but takes the position that at the time of death the policy according to its terms was lapsed and not in effect.

"The foregoing stipulation is in lieu of the defendant's proof on the question and will be received and treated as if the various matters therein had been testified to by the witnesses.

"This 7th day of June, 1928.

O.K. "A. Y. BURROWS—For Complainant,

"J. H. FRANTZ—For Defendant."

A supplemental stipulation introduces two letters from the general counsel of defendant explaining how the results of $2273 was reached, but inasmuch as it is conceded that this is all complainant can claim, if the policy was forfeited, it is not considered necessary to set out these letters. The question is, was the policy in force or was it forfeited at time of the death of Carl Roberts on the 3rd day of August, 1929?

The stipulated facts have been set out. There is no controversy about the provision of the policy as to a forfeiture if premium is not paid when due. In reply to this defense complainant insists that defendant did not declare a forfeiture and was estopped to do so by its course of dealing with the insured. That having reinstated the policy after previous defaults, without requiring a physical examination, the defendant was estopped to require this as condition of reinstatement after the default in payment of the premium of March 20, 1927.

In the first place all previous premiums had been met before the thirty-one days allowed had expired, either by payment in cash, or partly in cash and partly by note. True, he defaulted repeatedly on the notes, but this was not the same thing as a failure to arrange the premium at all. In these former instances there had been credit extended on the note executed in payment of the premium. As to premium due March 20, 1927 there was no settlement of the premium at all, and the medical examination was demanded as a condition of reinstatement. The complainant endeavors to show that the agents of defendant undertook to protect the insured from a forfeiture. All that the proof makes out in this regard, treating it all as competent, is that the agents undertook in a friendly way to see that the insured had notice of the premiums, was kept reminded of them, and assisted in adjusting them. When the last premium fell due on March 20, 1927, the defendant had no local agent but the stipulation shows that the insured received written notice before the premium fell due, after

it fell due and during the thirty-one days allowed to settle the premium after it was due. And after the thirty-one days expired he was urged to send the physician's certificate of insurability in order to obtain a reinstatement of the policy. Besides, the insured did not object and insist that the defendant had no right to require a medical certificate, but merely failed to obtain and forward same. We do not see how the local agents, if they or either of them had been acting in March, 1927, could have done any more to prevent a default or secure a reinstatement than was done. But if the preceding course of dealing had been different, this did not preclude the defendant from asserting its rights according to the terms of the policy, upon ample notice to the insured and full opportunity afforded him to protect himself from loss.

In Thompson v. Insurance Co., 116 Tenn., 565, the court said:

" 'If the permission to pay a premium or premiums after maturity was a matter of indulgence on the part of the company, it cannot justly be construed as a permanent waiver of the clause of forfeiture, or implying an agreement to continue the same indulgence for time to come. As long as the insured continued in good health it is not surprising and should not be drawn to the company's prejudice, that it was willing to accept the premium after maturity and waive the forfeiture which might have been insisted upon. This was for the mutual benefit of themselves and the insured at the time, and in each instance in which it happened, it had respect only to that particular instance without involving any waiver in reference to future payments. The insured had no right, without some agreement to that effect, to rest on such voluntary indulgence shown on one occasion or a number of occasions, as a ground for claiming it on all occasions. If it were otherwise, an insurance company could never waive a forfeiture on occasion of a particular lapse without endangering its right to enforce it on occasion of a subsequent lapse.' "

"Under the above authorities, before complainant can recover in this case, she must show:

" (1) That the course of dealing between the insurer and the insured, in reference to the acceptance of over-due premiums, amounted to a custom or a habit.

" (2) That by reason of this course of dealing, the insured was justified in believing that the company would not insist upon a forfeiture for his failure to pay his subsequent premiums ad diem.

" (3) That the insured did actually believe that he could postpone the payment of his future premiums after maturity without the risk of a forfeiture.

"(4) That the insured acted upon this belief in this instance, and that by reason thereof, did not pay the premium due December 30, 1904, at its maturity."

See also Richmond v. Insurance Co., 123 Tenn., 309.

It cannot be contended in the face of the evidence in the present case that the insured believed his policy was in force. The thirty-one days allowed expired on April 21st and on April 29th the company wrote from the Nashville office that the policy was lapsed and would have to be reinstated, and application for reinstatement must be approved before the policy could be restored to force. Then on May 16th, after the application for reinstatement had been forwarded to Nashville and thence to the home office, the defendant writes that before the application for reinstatement can be passed on, the customary physical examination must be had and medical certificate forwarded and directing the insured to see Dr. Copenhaver of Knoxville.

On May 31st, defendant again writes that the medical certificate has not been received and that meanwhile application for reinstatement and settlement "are held at this office without action." Again on June 15th the company writes "we are holding application for reinstatement awaiting medical certificate." On July 1 defendant writes that no action has been taken awaiting medical certificate "Policies at present time are in a lapsed condition." It cannot be said that Carl Roberts did not know his policy was lapsed. He applied to have it reinstated. This implied that he knew it required reinstatement. The application itself asks for the reinstatement of the policy which by reason of non-payment of the premium due on the 20th day of March, 1927, is not now in force, except as may be provided by the non-forfeiture provisions of said policy. And "I further agree that said policy shall not be revived or go into effect until this application for reinstatement is approved," etc. Then he is urged to send medical certificate, told that application cannot be approved until he does and that the policy is lapsed and he had ample time to send the certificate and have the application for reinstatement approved.

Counsel for complainant insist that the defendant must declare a forfeiture before it is effective, and cites among other authorities, 32 C. J., 1314, but the text does not support the contention. It reads:

"IN CASE OF NONPAYMENT OF PREMIUM. According to the more generally accepted rule, a provision for forfeiture or suspension of the policy in case of default in the payment of premiums may be self-executing, as where the contract provides that the policy shall be void in case of failure to pay a premium, or to pay a premium note at maturity, and, unless the necessity is imposed by statute, or the conditions of the contract, no notice of forfeiture is essential, but, where the provision for

forfeiture is contained only in the note given for a premium, it has been held that it is merely a condition subsequent and that an express declaration of forfeiture on the part of the company is necessary. Where, although perhaps no duty rests upon the company to act, it does so, its conduct must be consistent with a claim of absolute forfeiture and not such as to indicate that the forfeiture would not be relied on."

See also Edington v. Ins. Co., 134 Tenn., 196, where the court said: "Ordinarily, as stated in Cooley's Briefs on the Law of Insurance, if the contract provides that it shall be void if the premiums are not paid when due, or within a specified time thereafter, default in the payment of a premium when due will determine the insurance, without any action on the part of the insurer; and when a policy has so become void it cannot be revived without a new contract. Id., vol. 3, pp. 2260 and 2261."

Besides, what could be a more specific declaration than that contained in the letters from defendant: Your policy is lapsed and cannot be reinstated and revived until you submit the medical certificate.

It is contended for complainant that "lapsed" does not mean "forfeited." The language of the policy is "upon default in payment of any premium or premium obligation, this policy shall immediately cease and determine and become void." Then under reinstatement there is provision for it being "revived." Certainly the insured was notified that the policy was in that condition in which a default in payment of premium left it. That is, it had ceased, determined and become void. Also that in order to take effect again it must be revived and in order to be revived, the insured must produce "evidence of insurability satisfactory to the company," etc.

It is also contended that the company owed to Carl Roberts the dividend of $108.64 and this should have been applied to keep the policy alive. The company proposed to credit this amount on the premium and Roberts consented to this. But this did not pay the premium. Roberts had a right to insist on the payment of this dividend in cash. If he had done so and then sent it back to the company with his application for reinstatement, and it had been held awaiting his physical examination, the case would have been the same. In neither case could he claim that the policy had been kept alive. If the dividend had been sufficient to pay the premium unquestionably it would have been the duty of the company to pay the premium with the dividend, but when after crediting it there was still a default, the defendant could do no more.

All assignments of error are overruled and the decree of the court below is affirmed. Complainant and sureties on the appeal bond will pay the costs of the appeal.

Owen and Senter, JJ., concur.