Dorothy G. HUTCHINSON, Appellant,

v.

The EQUITABLE LIFE ASSURANCE
SOCIETY OF the UNITED STATES,
Appellee.

No. 20904.

United States Court of Appeals
Fifth Circuit.

July 16, 1964.

Wilmer H. Mitchell, of Holsberry, Emmanuel & Sheppard, Pensacola, Fla., for appellant.

James B. Watson, of Watson & Watson, Pensacola, Fla., for appellee.

Before RIVES, JONES and WISDOM, Circuit Judges.

RIVES, Circuit Judge:

This is an action by Dorothy G. Hutchinson, the beneficiary of a life insurance policy, against The Equitable Life Assurance Society for double indemnity benefits allegedly due under the policy. The suit was originally brought in a Florida court but was removed to the District Court for the Northern Dis-

trict of Florida, jurisdiction being based on diversity of citizenship. At the close of the plaintiff's case, the district court granted a directed verdict for the defendant, Equitable.

The questions to be decided are: (1) whether the insurer, having previously reinstated the policy after other defaults in premium payments, is prevented by waiver or estoppel from asserting termination of the additional indemnity provision; and (2) whether the insurer had on hand funds of the insured which should have been applied to the additional indemnity premium so as to prevent termination of that provision.

Equitable issued the insured, plaintiff's husband, a policy which provided both for participating whole life insurance with a face amount of $11,600 and for additional indemnity benefits in case of death by accidental means. In case of default and lapse for non-payment of premiums, the policy provided paid-up nonparticipating extended term insurance for its face amount. The premiums, due at the first of each month, with a 31-day period of grace, amounted to $23.32 for the life insurance and $1.04 for the additional indemnity. The insured was killed in an automobile accident on November 3, 1961, at which time he was in default beyond the grace period on a premium payment which had been due on October 1. On the day following the insured's death plaintiff tendered the defaulted installment, which Equitable then declined to accept. Although Equitable has paid the plaintiff $11,600 as extended term insurance benefits, it refuses to pay any additional benefits for death by accidental means. It is this additional indemnity which plaintiff is seeking to recover.

Equitable's contention is that, since the premiums were in default, the additional indemnity provision had terminat-

ed. Indeed, the additional indemnity provision of the policy expressly required proof that the insured's death occurred "while said *policy* and this *additional indemnity provision* were in force and no premium thereunder in default." (Emphasis added.) It further stated:

"This additional indemnity provision shall forthwith terminate: * * * if any premium on said *policy* or any *additional premium* payable for this additional indemnity provision is not paid before the expiration of the grace period for the payment thereof, unless waived in accordance with any disability provision of said policy * * *." (Emphasis added.)

Moreover, the provision declares:

"No additional indemnity benefits will be included in any extended term insurance or other paid-up benefit granted upon surrender or lapse of said policy or in paid-up additional insurance purchased with dividends under said policy."

■ One of plaintiff's two theories for recovery is that Equitable, by receiving and accepting previous late payments, had waived or is estopped from asserting the policy requirement that the premium be paid within the 31-day grace period. It seems that on a number of occasions the insured had allowed the policy to lapse beyond the grace period. In each instance Equitable then sent to him a default notice offering reinstatement if the defaulted installment were received in 15 days, "provided the Insured's death does not occur before the payment is received."[1] If the insured still did not pay, he was sent an application form through which Equitable would consider reinstatement. Each time the insured was in default he tendered payment and was reinstated. The plaintiff contends that Florida applies a

---

1. The body of such a notice would read:
"Please note the above numbered mortgage loan held by this Society is in default and the insurance applies. However, if payment of the above installment is received by the cashier on or before

* * * the insurance will be reinstated, *provided the insured's death does not occur before the payment is received.* Note: In addition to the above, also due and unpaid installments for the current month." (Emphasis supplied.)

blend of waiver and estoppel to an insurer who follows a course of dealing with the payment of premiums so as to induce the insured to believe that a delay in his premium payment will not give rise to a forfeiture.[2] Plaintiff then concludes that this principle applies to the instant case.

The fallacy of plaintiff's argument is that the default notices expressly stated that there would be no reinstatement if the insured died prior to receipt of the defaulted premium; thus there was no course of conduct by the insurer which in any way could have led the insured to believe that a default payment would be accepted after his death or that the policy had not lapsed. Accordingly, there can be no waiver or estoppel.[3]

█ The plaintiff's other theory is that Equitable was holding funds belonging to the insured which should have been applied to the overdue additional indemnity premium. Plaintiff contends that because of the insured's previous defaults and reinstatements there were periods during which he had no coverage under the additional indemnity provision, but that he paid for such coverage when he finally paid the defaulted installments.

The policy expressly stated that additional indemnity premiums paid after termination were to be refunded to the insured:

"No premium shall be due for this additional indemnity provision after it shall have terminated in accordance with the foregoing and the Society shall incur no obligation or liability hereunder by reason of receipt of any such premium. Any premium for this additional indemnity provision paid to the Society for any period following the date of its termination shall be refunded when it appears to the Society that an overpayment has been made."

Thus the plaintiff has calculated that Equitable was holding $5.72 in overpayments which should have been returned to the insured. Plaintiff reasons that $1.04 of this amount ought to have been used by Equitable to pay the additional indemnity premium overdue at the insured's death.

Assuming, without deciding, that Equitable was holding $5.72 belonging to the insured and assuming further that Equitable had a duty to apply these funds to the overdue premium, the ad-

---

2. Cf., Peninsular Life Ins. Co. v. Howard, Fla.1954, 72 So.2d 389; Industrial Life & Health Ins. Co. v. Cofield, 1933, 110 Fla. 315, 148 So. 549, 550. It is the general rule that "if the insurer customarily receives overdue premiums from the insured, and thereby induces him to believe that a forfeiture will not be incurred by a short delay in the payment of premiums, it cannot insist on a forfeiture for a delay induced by such custom." 29A Am.Jur. Insurance, § 1092, at 258 (1960); accord, Annot., 85 A.L.R.2d 1410, 1424 (1962).

3. See Hartford Life & Annuity Ins. Co. v. Unsell, 1892, 144 U.S. 439, 12 S.Ct. 671, 36 L.Ed. 496; 29A Am.Jur. Insurance, § 1092, at 259 (1960); Annot., 85 A.L.R.2d 1410, 1427–30 (1962). The court in Thompson v. Fidelity Mutual Life Ins. Co., 1906, 116 Tenn. 557, 92 S.W. 1098, 1101, 6 L.R.A.,N.S., 1039, stated:

"A permission to pay a premium after due date during the life and good health of the insured is not equivalent to a permission to pay after his death. It is well settled that a course of dealing between the parties, under which the insurer accepted overdue premiums when the insured was in good health, will not give his representative or himself the right to pay or tender his premiums after maturity, and he is in a bad state of health, or had died.

*     *     *     *     *

"The reason of this is, there has been an increase in the risk or hazard. An insurer might be willing to accept an overdue premium and reinstate an insured when his condition of health is the same as when the policy was originally issued, but it cannot be argued from this that he should be required to reinsure or reinstate the same person when he was or is in extremis. The course of dealing, if any, was to accept the overdue premiums, from a live man, not a dead one."

The present case is a stronger one since the notices of default expressly warned that there would be no reinstatement if the insured died before receipt of payment.

ditional indemnity provision would have nevertheless terminated. The policy provisions already quite plainly stated that the additional indemnity provision would terminate if any premium on either the principal policy or the additional indemnity provision were in default. Since the $5.72 would not have been sufficient to pay the $23.32 premium due on the main policy, the additional indemnity provision would have still terminated.

The judgment of the district court is Affirmed.