INSURANCE CO. *v.* HYDE.

(*Knoxville.*   October 21, 1898.)

1. LIFE INSURANCE. *Forfeiture of policy for nonpayment of dues.*

The insurer is estopped to claim forfeiture of a life policy for non-payment of dues where he, through a long continued and uniform course of dealing with the assured, had not exacted punctual payment of dues, but permitted the assured to pay upon notice or demand, and accepted such payment, though made after maturity, without objection, provided the particular dues, for nonpayment of which forfeiture is claimed, were paid or tendered within reasonable time after such notice or demand, and in reasonable conformity to such course of dealing. (*Post, pp. 397–399, 403–405.*)

Cases cited and approved: 61 Pa. St., 107; 38 Iowa, 304; 33 Ohio St., 459; 96 U. S., 572; 75 Ill., 426; 76 Ga., 575; 106 U. S., 30.

2. SAME. *Forfeiture for nonpayment of assessment.*

Before nonpayment of an amount, which, under the terms of a life policy must be ascertained and fixed by assessment, can be successfully relied on as a ground for forfeiting the policy, the insurer must plead and prove that an assessment had been duly made in accordance with the charter and by-laws of the company, and the terms of the policy.   (*Post, pp. 399–402.*)

Cases cited: 85 Ky., 1 (S. C., 7 Am. St. Rep., 571); 31 Barb., 178; 49 Mo., 332 (S. C., 8 Am. Rep., 132); 36 Ind., 430; 139 U. S., 297; 28 S. W. R., 498; 59 Am. St. Rep., 422.

3. SAME. *Policy requiring assessment to be made.*

The amount to be paid periodically by the assured to form a mortuary fund is not fixed or determinable from the policy itself, but must be ascertained and fixed by assessment, when the policy provides that such amount shall be computed according to a table of graduated ratios indorsed thereon, in view of the assured's age and the aggregate maximum indemnity for said purpose, allowing for discontinuance of membership. (*Post, pp. 400, 401.*)

Insurance Co. *v.* Hyde.

4. SAME. *Offer to pay not admission of correctness of amount due.*

The fact that assured, two days prior to his death, mailed to the company a check for the amount of the premium claimed, does not constitute such recognition of the correctness of the amount as relieves the company of the necessity to prove it. (*Post, pp. 402, 403.*)

FROM HAMILTON.

Appeal in error from Circuit Court of Hamilton County. FLOYD ESTILL, J.

E. WATKINS for Insurance Company.

BROWN & SPURLOCK for Hyde.

MCALISTER, J. The object of this suit was to enforce the payment of a policy of insurance issued upon the life of F. S. Hyde. There was a verdict and judgment in favor of the plaintiff for the sum of five thousand dollars, the face of the policy, and two hundred dollars interest. The company appealed, and has assigned errors.

On the trial below the company resisted the payment of the policy, upon the ground that the assured had . failed to pay quarterly dues, which were payable on June 5, 1897, and had also failed to pay what was known as a mortuary call, due on the same day, and that, in accordance with the express stipulations of the policy, it was thereby forfeited.

The plaintiff, on the other hand, insisted that it had been the uniform custom of the company, since the issuance of this policy in 1886, to give Hyde, and its other policy holders, notice, not only of this mortuary call or assessment, but to include in the notice quarterly dues, crediting total amount of the mortality call and quarterly dues with any dividends on account of interest accruing from the safety fund, as provided for in the policy, but that no notice was given the assured of mortality call and dues payable June 5, 1897.

It is insisted on behalf of the company that, on April 27, 1897, in accordance with its uniform custom, it caused to be mailed to the assured due notice of the mortality call and quarterly dues, payable June 5, 1897. It was denied by plaintiff that this notice was received by the assured, or was ever sent by the company. It was shown by the testimony of two brothers of the assured, who were with him constantly, that he was expecting such a notice, but did not receive it. This fact was also proved by Scott Raulston, a clerk in the office of the assured. It appears, however, that while assured was sojourning in Colorado for his health, a notice sent by the company reached Chattanooga on June 13, which was forwarded to assured at Colorado Springs, and, on his return to Chattanooga about June 28, 1897, a check for $17.25, covering mortality call and dues, was sent to the company. The company refused to accept this check, and returned it, claim-

ing the policy had been forfeited.    The assured, F. S. Hyde, died June 30, 1897.

It was shown that Stephen Ball, secretary of the company, in a letter to counsel for plaintiff, admitted that the first notice sent to F. S. Hyde was directed to 521 West Fifth Street, Chattanooga, when, in point of fact, said Hyde never resided at said address.    Ball, in a subsequent letter, explained that he was in error in stating that said original notice was directed to 521 West Fifth Street, but that said notice was addressed to F. S. Hyde, Chattanooga, as shown by register and galley slip of company.    These controverted questions of fact were all passed upon by the jury, and, by every intendment, they must be held to have been resolved in favor of the plaintiff's contentions.

The second assignment of errors is that the Court erred in instructing the jury that, under the terms of the policy, in so far as the mortality call of $13.50 is concerned, before defendant could successfully rely on the failure of assured to pay this sum of money, the company must establish by proof that an assessment had been made by the officers or agents of the company, in the manner and form authorized by the charter and by-laws of said company, and the policy of insurance sued on.

It is insisted on behalf of the company that the policy or contract sued on in this case fixes the plan of ascertaining the amount of the call, and neither the officers of the company nor its constitution and

by-laws have anything whatever to do with the assessment, and that the proof shows that the call was properly made, according to the contract, to become due June 5, 1897.

In determining the correctness of this charge, we must look to the terms of the policy. The clause relating to this subject is:

"In consideration of the representations, agreements, and warranties made in the application, and of the admission fee paid, and of three dollars per annum on each one thousand dollars of the maximum indemnity herein provided for—for expense dues—to be paid as hereafter conditioned, and of the further payment of all assessments proportioned to said maximum indemnity levied against the herein named member to form a mortuary fund, for the payment of all indemnity matured by the death of members, and to create a safety fund as hereinafter described, which assessments, to be levied upon all members holding similar certificates in force at the date of such deaths, shall be made according to the table of graduated assessment ratios given herein, and as further determined by their respective ages, and the aggregate maximum indemnity at the dates of such deaths, with due allowance for discontinuance of membership," etc.

We think this provision of the policy furnishes a complete refutation of the argument of counsel and sustains the charge of the Court. The mortuary call is not fixed at a determined figure in the policy,

but is be ascertained according to the table of graduated ratios thereon given, in view of the member's age and the aggregate maximum indemnity, and allowing for discontinuance of membership, etc. The amount of mortuary call would, of course, depend upon the number of deaths, and would be reduced by dividends that the assured might earn. This policy contemplates that an assessment must be made by directors of the company, and notice given, in order that assured may know amount he is expected to pay. Says Mr. Joyce, in his work on Insurance: "The act of making an assessment is a ministerial and not a judicial one; therefore, no presumption can arise in favor of the regularity or legality of assessments, and it is an affirmative matter, both by pleading and evidence, necessary to establish a forfeiture for nonpayment of an assessment, that the assessment should appear to have been made in the manner, mode, and in conformity with the authority given, and for a proper purpose." *Ib.*, Secs. 1291, 1294, 1310; *American Mutual Aid Society* v. *Helburn*, 85 Ky., 1 (S. C., Vol. 7, Am. St. Rep., pp. 571–576).

May on Insurance, Sec. 557, says: "An assessment can only be valid when laid under the conditions stated in the charter. . . . The liability of the assured is conditional, and depends upon the contingency of the happening of losses and expenses to which he should be liable to contribute, which have been duly ascertained by the directors, and which make a resort to an assessment thereon. . . .

17 P—26

The promise of the assured is to pay upon such conditions, and the existence of these conditions must be established affirmatively before a call for payment . . . can be enforced." *Thomas* v. *Whallon*, 31 Barb., 178; *Pacific Insurance Co.* v. *Guse*, 49 Mo., 332 (S. C., 8 Am. Rep., 132); *Embree* v. *Shidiler*, 36 Ind., 430; *Mutual Reserve Fund Life Association* v. *Hamlin*, 139 U. S., 297.

In *Barbot* v. *Mutual Reserve Fund Life Association*, decided by the Supreme Court of Georgia (28 S. W. R., 498) it was said: "A table attached to a certificate of membership in a mutual life insurance association, termed 'an assessment rate table,' showing, by amounts starting with $1, the proportionate assessments to be made at different ages on each $1,000 insured, will be construed to fix the ratio of payment by each member on account of death losses, on the basis of age, and not as fixing the amount of the assessment where the constitution and by-laws provide that at stated intervals assessments shall be made on the entire membership, of such sums as may be deemed sufficient to meet existing death claims, which shall be apportioned among the members according to age." *Goodwin* v. *Insurance Co.*, 97 Iowa (S. C., 59 Am. St. R., 422).

The fact that the assured, two days prior to his death, mailed to the company a check for the amount of premium claimed, would not constitute such a recognition of the correctness of the amount

as would relieve the company of the necessity to prove it. *Insurance Co.* v. *Hamlin*, 139 U. S., 306.

The third assignment is: The Court erred in instructing the jury, viz.: "If you believe, from the evidence in the case, it was the uniform custom and course of business of defendant company to notify its policy holders, especially the assured, the said F. S. Hyde, that annual and quarterly dues were due and payable at stated times, and the course of dealing in this regard was so long and of such a character as to induce Mr. Hyde to believe a forfeiture would not be insisted upon unless notice was first given, and if it was the uniform custom of the company to give notice of the payment of such assessments and quarterly dues, and to include the two as a part of the account so stated, and not as a separate account, then the assured was not bound to pay said annual or quarterly dues until such notice was mailed."

It is insisted this charge is erroneous, for the reason the dues were payable quarterly, and the assured had carried the policy long enough to know when the dues were payable. It is insisted that the mere fact that notice of the quarterly dues was included in the same notice given for the payment of mortality calls, under the custom of the company, is not sufficient to change the rule of law. In support of this proposition, counsel cites Cook on Life Insurance, p. 160, in which the author says: "It is, however, difficult to see any sound basis for

the proposition that the mere usage of giving notice should in any case be sufficient to constitute the agreement to give such notice—in other words, to operate as a waiver of prompt payment in default of such notice; for such usage in no way contemplates as a time of payment a time later than that fixed by the contract, but, on the contrary, rather indicates, by way of reaffirmance, the original agreement that the time shall be exactly as fixed. It is, in short, a mere reminder of the obligations of the insured; in no sense a waiver of it."

We find the great weight of authority is against the view expressed by Mr. Cook. Mr. Joyce, in his work on Insurance, Vol. 2, Sec. 1332, says: "If a life insurance company has been in the practice of notifying the insured of the time when the premium will fall due, and of the amount, and the custom has been so uniform and so reasonably long in continuance as to induce the assured to believe that a clause for forfeiture for nonpayment will not be insisted on, but that the notice will precede the insistence upon the forfeiture, and the insured is, in consequence, put off his guard, such notice must be given, and, if not given, no advantage can be taken of any default in payment which it has thus encouraged, for the insured is entitled to expect the customary notification, and to mislead the insured by not giving such notice, and then insist upon a strict compliance with the conditions of forfeiture, constitutes, under such circumstances, a fraud upon

Insurance Co. *v.* Hyde.

the assured which the Courts have refused in numerous cases to countenance." Cases cited by the author are: *Home* v. *Philadelphia Life Ins. Co.*, 61 Pa. St., 107; *Mayer* v. *Mutual Life Ins. Co.*, 38 Iowa, 304; *Union Central Ins. Co.* v. *Pattker*, 33 Ohio St., 459; *New York Life Ins. Co.* v. *Eggleston*, 96 U. S., 572; *Insurance Co.* v. *Pierce*, 75 Ill., 426; *Grant* v. *Alabama Gold Ins. Co.*, 76 Ga., 575; May on Insurance, Sec. 356; 2 Joyce on Insurance, Sec. 1334; *Phœnix Ins. Co.* v. *Doster*, 106 U. S., 30; Bacon Benefit Societies, Secs. 362–370. We have examined the cases cited, and, in our opinion, they announce the correct rule on this subject.

There is no error in the charge of the Circuit Judge, and the judgment is affirmed.