ELLIS-JONES DRUG CO. *v.* HOME INS. CO.

(*Nashville.* December Term, 1928.)

Opinion filed January 19, 1928.

LOWELL W. TAYLOR, for complainant, appellant.

R. L. BARTELS, for defendant, appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The complainant herein procured from defendant insurance company a policy of fire insurance known as a "Merchandise Floater Open Policy" on February 25, 1924. Complainant was a wholesale dealer in Memphis and sold soda fountains, fixtures, etc., upon a deferred payment plan, retaining a lien or title to secure itself. Upon sale of any such articles on said terms, the complainant would send to defendant a notice or "record of entry," describing the property sold and its value, and upon receipt of such notice, under the terms of the policy, defendant assumed liability for loss by fire of the articles described in said record of entry.

(1) The policy provided premiums should be paid to the company "not later than thirty days from the last day of the month in which said record of entry is made. Failure to pay such premium, as above provided, shall render void such record of entry, and no liability shall attach thereunder."

About May 9, 1927, complainant sold a soda fountain and fixtures of the value of $2400 to a drug store at Tutwiler, Mississippi, and forwarded to defendant a record of entry and sometime thereafter defendant rendered a statement to complainant showing that the notice had

been received and setting out the premium on this particular insurance. On July 27, 1927, the drug store containing this soda fountain and fixtures burned and the soda fountain was completely destroyed. Complainant gave immediate notice of the loss but defendant denied liability on the ground that the premium for insurance on this soda fountain had not been paid pursuant to contract and that defendant had accordingly been released from liability on this account.

The aforesaid record of entry having been sent to the defendant about May 9, 1927, according to the provisions of the policy, premium for insurance on these particular goods was done thirty days from the last day of the month of May, 1927, or June 30, 1927. The loss, as stated above, occurred on July 27.

The complainant relies on a custom or course of dealing which had obtained between it and the defendant, during the life of the blanket policy, whereby complainant was allowed to pay premiums, and such premiums were accepted without project, after they became due. From a statement contained in the bill, which is admitted in the answer, it appears that, beginning with the premium or premiums due May 30, 1924, and ending with the premium or premiums due April 30, 1927, the complainant had tendered and defendant had received twelve delinquent payments on account of the premiums. These payments were tendered and received at periods, after their due dates, ranging from four days to three months.

From the issuance of the policy until the time of the loss here involved, assuming that records of entry were sent to defendant each month, forty-one premium payments had accrued under the terms of the policy. Of these premium payments twelve, or a little less than one-

third, were received when they were delinquent, without protest. We are of opinion that such facts establish a custom or course of dealing between the parties.

In *Life Insurance Company* v. *Fallow,* 110 Tenn., 720, this court said:

"It is, of course, true that a provision for the release of an insurance company from liability for nonpayment of premiums is a material element of the contract, and that on violation of such a provision, unless there has been a waiver thereof, neither a court of law nor of equity will enforce the contract. (Citing authorities).

"But the law is equally well settled that insurers are estopped to insist upon forfeiture for non-payment of premiums when due, when, by any course of action, representation, or dealings, the assured has been led to believe that the forfeiture will not be insisted upon; or, as said in *New York Life Ins. Co.* v. *Eggleston*: 'Any agreement, declaration, or course of action on the part of an insurance company, which leads a party honestly to believe that by conformity thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture.' (Citing authorities)."

Similar statements of the law have been made by this court in *Murphy* v. *Southern Life Insurance Company,* 62 Tenn. (3 Baxt.), 440; *Insurance Co.* v. *Hyde,* 101 Tenn., 396; *Sugg* v. *Assurance Society,* 116 Tenn., 658; *Kavanaugh* v. *Insurance Co.,* 117 Tenn., 33; *Davis* v. *Insurance Co.,* 127 Tenn., 330; *Foresters* v. *Cunningham,* 127 Tenn., 521, and other cases.

On August 4, 1927, the complainant forwarded to defendant its check for $109.37 to cover statement rendered for premiums on items insured during the month of May, 1927, including the premium due for insurance on this particular property destroyed. The Chancellor was of opinion that because no tender of the premium due upon the insurance herein had been made until after the destruction of the property, the custom or course of dealing relied on by the complainant was not available to it. The conclusion of His Honor was justified by certain language used in the case of *Thompson* v. *Ins. Co.,* 116 Tenn., 557. Such language, however, was altogether unnecessary to a decision of that case and is out of harmony with the decisions of this court. That was a suit upon a life insurance policy and it was plainly demonstrated in the opinion that no custom or course of dealing to accept overdue premiums had been established. Proceeding, the court says that the rule of estoppel or waiver to declare a forfeiture on account of overdue premiums, contrary to a custom or course of dealing does not "in any event apply, unless the payment is made and accepted during the life of the insured," and authorities are cited believed to support the statement made.

In *Life Insurance Company* v. *Fallow, supra,* tender of the delinquent premium was not made until after the death of the insured. In *Murphy* v. *Southern Life Insurance Company, supra,* payment of the delinquent premium had not been made at the death of the insured. In *Kavanaugh* v. *Insurance Co., supra,* where an estoppel was invoked to prevent the insurance company from declaring a forfeiture for delinquency, the insured had been stricken with paralysis before a tender was made. Likewise, the insured had been stricken with mortal ill-

ness and tender of the delinquent premium was made two days before his death in *Insurance Co.* v. *Hyde, supra.* In all these cases the insurer was, by reason of its course of dealing or other matters, held estopped to declare a forfeiture, although premiums were delinquent and unpaid and there was no tender until the insured had died or was *in extremis.*

The language used in *Thompson* v. *Insurance Co.,* 116 Tenn., 557, quoted above, is to some extent sustained by expressions in *Thompson* v. *Knickerbocker Life Insurance Company,* 104 U. S., 252, 26 L. Ed., 765. In the latter case, however, the delinquent premium never was paid, nor was any tender thereof made. Indeed the court found that no custom to receive delinquent premiums had been proven. The Supreme Court of the United States is not committed to the idea that an estoppel against an insurance company to claim a forfeiture on account of a delinquent premium is only available when tender of the premium is made before death or loss. In *Phoenix Mutual Life Insurance Company* v. *Doster,* 106 U. S., 30, 27 L. Ed., 65, the court held that the facts appearing estopped the company from insisting on a forfeiture, although tender of the overdue premium was not made until after the death of the insured. *Thompson* v. *Knickerbocker Life Insurance Company, supra,* was carefully distinguished. See, also, *Hartford Life & Annuity Insurance Company* v. *Unsell,* 144 U. S., 439, 36 L. Ed., 496.

The English cases, *Want* v. *Blunt,* 12 East. Rep., 183, and *Pritchard* v. *Association,* 3 C. B., 622, cited in *Thompson* v. *Insurance Co.,* 116 Tenn., 557, merely declared the effect of certain policy provisions and did not deal with the effect of any custom or course of dealing. We are of

opinion that *Carlson* v. *Supreme Council,* 115 Cal., 466, also cited in *Thompson* v. *Insurance Co.,* 116 Tenn., 577, announces a correct rule in the following words: ''The contract of insurance becomes complete at the death of the insured. The liability or non-liability becomes fixed by that event. The right to recover depends upon the conditions existing at the moment of the insured's death.''

*(2)* In *Foresters* v. *Cunningham, supra,* this court declared the fundamental basis of the doctrine of waiver and estoppel as applied to insurance contracts, in these words:

''This doctrine does not grow out of the original agreement of the parties, but is based upon the conduct and dealings of the parties with each other in respect of the particular matter in controversy. It affects the conscience of the party whose conduct has led the other to a course of dealing to his injury, so that he is not allowed to predicate a right upon a former agreement inconsistent with his course of conduct. In practical effect, the conduct of the parties makes a new contract, the substance of which is that the society agrees not to insist upon the forfeiture clause. It is not meant that the parties formally agree to a waiver of the forfeiture clause, but that the courts will not allow the party claiming the forfeiture in violation of good faith and good conscience to set it up.''

The substance of the new contract in the case before us, arising out of the custom and course of dealing between the parties, was that, besides the thirty days after the month of the record of entry, the insured might have additional time in which to make the premium payments. As heretofore shown, this additional time was a period

ranging from four days to three months. The premium payment refused in this case was tendered thirty-five days after it was due. The tender, therefore, was not made longer after the due date than several other past-due premiums had been accepted. The condition existing at the time of the loss herein was that the time for the payment of the premium for insurance on the property destroyed had been extended by a custom or course of dealing. Payment of the premium was tendered during an extension sanctioned by usage. The policy was in force by reason of the custom or course of dealing at the time of the loss. A valid contract of life insurance is not invalidated by the nonpayment of a premium required to be paid, unless the policy contains a provision to that effect. *Fourth & First Bank & Trust Co.* v. *Fidelity & Deposit Co.,* 153 Tenn., 176. As we have seen, the provision for forfeiture in the policy before us had been altered by a custom or course of dealing, and the defendant is not entitled to rely on such provision, payment of the premium having been tendered within the usual time.

In *McCullough* v. *Insurance Co.,* 118 Tenn., 264; *Johnson* v. *Insurance Co.,* 119 Tenn., 598, and *Davis* v. *Insurance Co.,* 127 Tenn., 330, the policies considered provided for premiums payable in installments. In all these cases, the policies were suspended, during the delinquency of installment payments. There was no custom or course of dealing which kept the policies in force during delinquency.

Some of the cases cited in *Thompson* v. *Insurance Co.,* 116 Tenn., 557, or relied on by counsel for defendant are, as we think, not in point. Others we are not willing to follow.

For the reasons stated, the decree of the Chancellor is reversed and a decree will be entered here in favor of the complainant for the amount of the policy with interest from the date of suit. We do not think this is a case for the addition of the statutory penalty, since the defense was obviously made in good faith.