AMERICAN NATIONAL INSURANCE CO. *v.* SIGGA DAVIDSON.

(*Nashville*, December Term, 1932.)

Opinion filed March 18, 1933.

M. S. Ross, for plaintiff in error.

WM. M. GREENE, for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion, of the Court.

This is a suit to recover the face value of a contract of insurance issued to Scott Davidson, plaintiff's deceased husband. The circuit court rendered judgment for the plaintiff, and the insurance company has appealed in error. The material facts are stipulated.

The consideration for the contract is stated therein as the payment of a policy fee of five dollars, and the payment of a monthly premium of $2.50 on or before the first day of each month.

The insurance was against death or disability resulting from bodily injury by accident, and against death and disability from bodily disease or illness. The principal or contracting clause reads:

"This Policy will pay the sum of FIVE HUNDRED DOLLARS for Death from ACCIDENT or the sum of ONE HUNDRED DOLLARS for Death from SICKNESS after it has been maintained in continuous force and effect for not less than six consecutive months immediately preceding death of Insured, without delinquency; provided that one-half these amounts will be payable

upon the death of the Insured if the Policy has been in force for less than six consecutive months without delinquency. ("Without delinquency" meaning that each consecutive renewal premium has been paid within the five days' grace period as provided in Article 2 of Agreements and Conditions.) Death or disability due partly to accidental injury and partly to disease or bodily infirmity shall be classed as an illness and covered only under the natural death from sickness clause provisions hereof, the original or exciting cause thereof notwithstanding."

The defense to the suit is grounded on paragraph 2 of "Agreements and Conditions." This paragraph is as follows:

"A period of five (5) days of grace is allowed for the payment of any monthly installment or renewal premium, during which the Policy shall be maintained in full force and effect in accordance with its terms, but if the payment of any installment or renewal premium is not made within the grace period, the Policy will expire and neither the Insured nor the Beneficiary shall be entitled to recover for any accidental injury sustained between the date of such expiration and 12:00 o'clock noon, standard time, of the day following the date of such payment; or for any illness originating causing disability or death before the expiration of ten (10) days after the date of such renewal payment; failure to pay any renewal premium or installment thereof will void this Policy."

The insured, in apparently good health, suffered a stroke of apoplexy on June 22, 1931, and died on that day. The premium for the month of June was paid on the sixteenth day of the month. Hence the insurance company insists that, under the quoted paragraph 2, death resulted

from an "illness originating (and) causing disability or death before the expiration of ten (10) days after the date of such renewal payment," and that therefore such death was not insured against.

The contract was dated July 31, 1928, the first month's premium having been paid in advance. Receipts kept by the insured showing premium payments for the first twelve and the last two months of the life of the policy were introduced in evidence. From them it appears that only five of the fourteen monthly payments were made within the five days of grace. The premium for May, 1928, was accepted on the eighth day of June. In two other months the premium was paid after the twentieth day. The average date on which payment of the fourteen premiums was made was the twelfth day of each month. It is stipulated that for the twenty months not covered by the receipts exhibited, the "premiums were paid in substantially the same way."

It thus appears that if the letter of the contract be enforced as written, although the insured paid the full premium for thirty-four months, he was insured against disability or death from accident during only about three-fourths of each month, and was insured against disability or death from illness during one-third of each month. For the month of May, 1929, there was no coverage at all, since the premium for that month was not paid until the eighth day of the following month; and in those months in which the premium was paid as late as the twentieth day, the insurance against illness did not attach. So construed and enforced, the particular contract would be likened strongly to a wagering or gaming contract, the insurance company assuming the risk only that

the insured would undergo injury or disability during the first five days or during the latter part of each month.

Three of the premium receipts, including the two payments immediately preceding the date of the death of the insured, were stamped with the words: "Accepted as per clause 2, Agreements and Conditions of policy." There is, however, nothing in the record to suggest or indicate that the insurance company at any time made any protest at the habitual payments after the fifth day of the month, or that such payments were not entirely satisfactory to it.

 It has been judicially recognized that in insurance contracts, maintained in force by periodical premium payments, the stipulated time for the payment of such premiums is of the essence of the contracts, and that reasonable forfeiture for default will be enforced. It is also the rule of this Court, however, that a provision for forfeiture contained in the contract or policy may be altered by a subsequent custom or course of dealing between the parties. *Ellis-Jones Drug Co.* v. *Home Ins. Co.,* 158 Tenn., 237, 12 S. W. (2d), 707, and cases there cited. This rule, and the reason therefor, is stated in *Foresters* v. *Cunningham,* 127 Tenn., 521, 530, 156 S. W., 192, 5 A. L. R., 1569, quoted in *Ellis-Jones Drug Co.* v. *Home Ins. Co., supra,* as follows:.

"This doctrine does not grow out of the original agreement of the parties, but is based upon the conduct and dealings of the parties with each other in respect of the particular matter in controversy. It affects the conscience of the party whose conduct has led the other to a course of dealing to his injury, so that he is not allowed to predicate a right upon a former agreement inconsistent with his course of conduct. In practical effect, the con-

duct of the parties makes a new contract, the substance of which is that the society agrees not to insist upon the forfeiture clause. It is not meant that the parties formally agree to a waiver of the forfeiture clause, but that the courts will not allow the party claiming the forfeiture in violation of good faith and good conscience to set it up.''

Long before the contract of insurance was matured by the death of the insured it was apparent that the insured could not or would not pay the monthly premiums within the five days of grace following the first day of each month. It was expressly provided by paragraph 8 of the ''Agreements and Conditions'' of the contract that ''The acceptance of any renewal premium on this Policy shall be optional with the Company.'' Therefore, the continued acceptance, month after month, of past due premiums, without protest, demonstrates that the insurer did not regard it essential to the proper conduct of its business nor to the continuance of the particular contract that the premiums be paid when due. If so, it would have declined to continue the contract in force.

The stipulated consideration for the full amount of insurance was at the rate of $2.50 per month. This amount having been received by the insurer for the entire period from the date of the contract to and including the month in which the insured died, the exclusion of the ten-day period from the date of the last payment, as well as the exclusion of previous periods between the fifth day of each month and the date of the premium payment for that month, under the circumstances of this case, would clearly amount to a forfeiture, as a penalty for failure to pay promptly. On no other theory could the insurer justify its retention of so many premiums for the

entire month, while extending the insurance protection to only a portion of the month. In this case the element of forfeiture is just as apparent, with reference to ·the ten-day exclusion period following the date of the tardy payment, as it is with reference to the period between the due date and the date of payment, since the insurer collected and retained the amount stipulated as the premium for the entire month. The insured is denied something for which he has paid in full, because of the time at which he made the payment.

The validity and enforceability of such a forfeiture provision as that under consideration has been generally sustained. *Richardson* v. *American National Insurance Company,* 18 Louisiana Appeal Reports, 468, 137 Southern R., 370, and cases therein cited. In that case the ten-day exclusion following the date of delinquent payment of a monthly premium was enforced against the insured, notwithstanding ''for practically four years'' the premium had been accepted from three to fifteen days late each month, without protest or objection by the company. However, the court declined to consider these special facts as affecting the particular case, because the clause had been generally held enforceable by the Supreme Court of the State. It does not appear that this case was reviewed by the Supreme Court of Louisiana.

█ That such a provision for forfeiture of insurance, by lapse or suspension, for nonpayment ·of premiums when due, is a valid and enforceable stipulation of the contract of insurance when made, as designed to secure the prompt payment of the premiums, does not at all imply that the parties to the contract may not, by subsequent custom and course of dealing, relegate the matter of promptness of premium payments to such a position

of minor importance as to destroy the contractual basis of the right of forfeiture. "Forfeitures are not favored, and will not be enforced against good conscience." *Foresters* v. *Cunningham,* 127 Tenn., 521, 529.

We will not impute to the insurance company an intention, in preparing the terms of its insurance contract, to so word its provisions as to enable it to habitually and customarily collect premiums for periods during which the insurance is not in force. We think we must assume that the forfeiture and suspension clause was inserted to insure the prompt payment of premiums. Therefore, it necessarily follows, in our opinion, that when under a particular contract prompt payment of monthly premiums becomes the exception rather than the rule, without protest or objection on the part of the insurer, the contractual penalty for delay is thereby waived and may not be enforced against the insured.

The fact that the insurer, receiving the last two premium payments after their due dates, caused to be stamped on the receipts the words, "Accepted as per clause 2, Agreements and Conditions of Policy," does not affect the result. The words thus stamped on the receipts may be said to have registered the insurer's intention not to waive the forfeiture provision of the clause 2, but it had already committed itself to the course of conduct from which the waiver is inferred and by which the forfeiture was rendered unenforceable. We give effect to the actions rather than to the words of the insurer.

We reach the same conclusion with regard to the provision of the clause "A," that the face amount of the policy should be payable on the policy "after it has been maintained in continuous force and effect for not less than six consecutive months immediately preceding death of In-

sured, without delinquency; provided that one-half these amounts will be payable upon the death of the Insured if the Policy has been in force for less than six consecutive months without delinquency." The premium exacted was for the face value, and the provision limiting liability to one-half the face value was clearly designed to secure prompt payment of premiums. We hold that this provision was waived by the insurer, in the same manner and for the same reasons as in the case of the ten-day exclusion clause.

The judgment of the circuit court is affirmed, with interest and costs.