LESTER *v.* SOVEREIGN CAMP, W. O. W.

*(Knoxville,* September Term, 1937.)

Opinion filed Nov. 27, 1937.

R. D. Busbee, Jr., and Norman B. Morrell, both of Knoxville, for plaintiff in error, Rosa Lester.

Grimm & Tapp, of Knoxville, for defendant in error, Sovereign Camp.

Mr. Justice McKinney delivered the opinion of the Court.

Rosa Lester, beneficiary, instituted two suits against defendant on two death benefit certificates for $1,000 each which it issued on the life of her husband, Elmer T. Lester. The first certificate was issued on April 26, 1932, and provided for a monthly assessment or install-ment of $2.23. The second certificate was issued Feb-ruary 23, 1934, the monthly installment being $2.41. The certificates, under their provisions, lapsed unless the installments for the current month were paid by the thirtieth day of that month. The insured was taken ill on April 9, 1935, and died four days later. At the time of his death the installment for March on the older cer-tificate, and the installments on the younger certificate for February and March of that year, had not been paid. They were paid by some friend of insured a day or two after his death, and forwarded to and received by de-

fendant in total ignorance of the illness and death of insured. Defendant, upon learning of the death of insured, tendered back said assessments, and also tendered them in court in these cases. It is apparent, therefore, that these policies had lapsed and were not in effect when insured died. To meet this situation plaintiff invokes the doctrine of "waiver" and "estoppel," alleging that defendant, by its course of conduct in accepting payments of installments from six to fifteen days after their due date, had waived certain provisions of the contracts as to forfeitures, and is, therefore, estopped from relying thereon.

The two cases involve the same question, and were heard together by the trial court without the intervention of a jury. He denied a recovery and dismissed both suits. Upon appeal, the Court of Appeals reversed the trial court, being of opinion that defendant, by its course of conduct, had waived the penalties as to paying installments on their due date. Petitions for writs of *certiorari* have heretofore been granted, and the cases argued at the bar of this court.

The constitution, laws, and by-laws of the association are made a part of the contract of insurance, the pertinent provisions of which are as follows:

"Sec. 63. (a) In order to accumulate and maintain funds for the payment of the benefits stipulated in beneficiary certificates held by the members of this Association, as and when such benefits accrue, to maintain the reserves thereon and to provide for the payment of the expenses of the Association, every member of this Association shall pay to the Financial Secretary of his Camp one annual assessment in advance each year, or one monthly installment of assessment each month, as

required by these laws or by the provisions of his beneficiary certificate, which shall be credited to and known as the Sovereign Camp fund; and he shall also pay such Camp dues as may be required by the by-laws of his Camp.

"(b) If he fails to make any such payment on or before the last day of the month he shall thereby become suspended, his beneficiary certificate shall be void, the contract between such person and the Association shall thereby completely terminate, and all moneys paid on account of such membership shall be retained by the Association as his liquidated proportionate part of the cost of doing business and the cost of the protection furnished on the life of said member from the delivery of his certificate to the date of his suspension; except as otherwise provided in his certificate or in Section 79.

"(c) Such person, if in good health, may thereafter make a new contract with the Association, upon the same terms and conditions, by complying strictly with the provisions of these laws.

"Sec. 64. A person who becomes suspended for non-payment of assessments or installment of assessment is not entitled to any benefits of this Association, nor shall he receive the password or participate in any of the business or social proceedings of the Camp to which he had belonged.

"Sec. 65. Any person who has become suspended because of the non-payment of any installment of assessment, if in good health, may within three calendar months from the date of his suspension again become a member of the Association by the payment of the current installment of assessment and all installments of assessments which should have been paid to maintain

him as a member. Whenever installments of assessments are paid by or for a person who has become suspended for the purpose of again making him a member, such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member, and to contract that such installments when so paid after he has become suspended for non-payment of assessments shall be received and retained without waiving any of the provisions of this section or of these laws until such time as the Secretary of the Association shall have received actual, not constructive or imputed, knowledge that the person was not in fact in good health when he attempted to again become a member. Provided, that the receipt and the retention of payment of such installments of assessments in case such person is not in good health shall not make such person a member or entitle him or his beneficiary or beneficiaries to any rights whatever.

"Sec. 66. (a) The retention by the Association of any installment of assessment paid by or for any person after he has become suspended in order to again make him a member, shall not constitute a waiver of any of the provisions of this Constitution, Laws and By-Laws, or an estoppel upon the Association.

"(b) Any attempt by a suspended person to again become a member shall not be effective for that purpose unless such person be in fact in good health at the time and continue in good health for thirty days thereafter, and the payment of any unpaid installment of assessment shall be a warranty that such person is at the time

in good health and that if the warranty is not true the certificate shall be null and void.

"Sec. 67. Should a person be suspended more than three and less than six months, if in good health, by delivering to the Financial Secretary a certificate of good health signed by himself, in which he shall warrant that all the statements contained therein are true, and by the payment of all sums which he should have paid had he remained a member, including the current installment of assessment, and upon receipt and acceptance of said health certificate and the money by the Secretary of the Association, and if said person shall remain in good health for thirty days following, he shall again become a member.

"Sec. 68. Should a person be suspended more than six months, he cannot again become a member except upon surrendering his old certificate and making a new application, subject to all requirements for new applicants except introduction. . . .

"Sec. 109. (g) The Financial Secretary shall not by acts, representations or waivers, nor shall the Camp by vote or otherwise, or any of the officers, have any power or authority to waive any of the provisions of the Constitution, Laws and By-Laws of this Association nor to bind the Sovereign Camp by any such acts. . . .

"Sec. 111. On or before the fifth day of every month the Financial Secretary of each Camp shall remit all the Sovereign Camp funds in his hands and all other funds due the Sovereign Camp to the Secretary of the Association. Such amounts shall be remitted in money order, certified check, bank cashier's check, or bank draft with exchange, payable to the order of the Treasurer. Accompanying such remittances, the Financial

Secretary shall also forward such detailed statement of the standing of the members in the Camp as shall be required for the information of the Secretary of the Association, upon blanks furnished for that purpose.''

Under the foregoing provisions, a suspended member, by paying the current and all past-due installments within three months from the date of his suspension, is *ipso facto* reinstated, provided he is in good health and so continues for thirty days. If he is not in good health, he is not reinstated by paying his current and past-due installments. If such suspension exists for more than three and not exceeding six months, the insured must also file a certificate of good health, and remain in good health for thirty days thereafter, in order to again become a member of the association. Should a member be suspended more than six months, he cannot again become a member, except upon surrendering his old certificate and making a new application.

Insured, in paying his installments on an average of twelve days after they became due, and at a time when, so far as the record shows, he was in good health, was strictly complying with the terms of his contracts, and was not establishing a new agreement by custom or course of dealing between the parties. Take, for example, the second certificate which lapsed on the first day of March for failure to pay the February installment. Insured also failed to pay the March installment on that certificate. Insured did not become ill until the 9th day of April, and died four days later. Giving effect to the 30-day provision, it was necessary for insured to have paid his February and March installments not later than March 10, which would be 30 days prior to his illness. The March installment on the other certificate

had to be paid on or before that same date in order to reinstate it. Paying the past-due installments after his death could not revive the certificates because that would not be a compliance with the good health clause of the by-laws.

For the reasons set forth above, we are of the opinion that the question of waiver and estoppel is not involved in these cases. If, by its course of dealing, defendant had accepted from time to time such delinquent installments, with knowledge that the insured was not in good health when they were paid, it could be plausibly argued that it had waived the forfeiture provision relating thereto. But it is not shown that defendant ever accepted a delinquent installment with knowledge that insured was in bad health at the time.

▌ The Court of Appeals based its decision primarily upon the case of *American Nat. Ins. Co.* v. *Davidson,* 166 Tenn., 13, 57 S. W. (2d), 788, in which it was held that when prompt payment of monthly disability life policy premiums becomes the exception rather than the rule, and without insurer's objection, the contractual penalty for delay is waived. The rule applied in that case is predicated upon the idea that the insurer by a course of conduct has led the insured to believe that a forfeiture would not be insisted upon. But, as previously stated, so far as appears from the record in this case, the defendant has in nowise led the insured to believe that it could accept installments in arrears after he became ill, or from friends after his death. With respect to the above case of *American Nat. Ins. Co.* v. *Davidson,* it will be noted that the accident policy there involved contained no provisions for reinstatement similar to those incorporated in the by-laws of defendant. It

also appears in that case that the premiums were paid while the insured was in good health. The question we are considering was decided by the Court of Appeals[1] (petition for writ of *certiorari* denied by this court) at Jackson in May, 1936, in the case of *Ethel D. Autry* v. *Sovereign Camp Woodmen of the World,* Henderson Equity. In that case the insured paid his January, 1933, installment on February 20, 1933, at which time he was in poor health. At the same time he paid installments in advance for five additional months. He died March 31, 1933, from the disease with which he was suffering when he made the payments on February 20. The beneficiary was denied a recovery. Such was also the holding of the Supreme Court of Kansas in *Pickens* v. *Security Benefit Ass'n,* 117 Kan. 475, 231 P., 1016, 1020, 40 A. L. R., 654, 662, in which it was said: "The member contracted that receipt and retention of dues after suspension, when he was not in good health, should not restore him or his beneficiary to any rights under the certificate. The contract protected defendant until it was appraised of the fact the member was in bad health. Having knowledge of the fact the member was in bad health, defendant might, if it chose, waive the requirement of good health. When, however, defendant learned the member was in bad health, it denied liability on that ground, and restored to plaintiff all it had received."

This is simply a case where the insured permitted his insurance to lapse and failed to reinstate it while in good health, as he had done on previous occasions in conformity with the provisions of his contracts. Clearly, the defendant is not liable on these certificates.

It follows that the judgments of the Court of Appeals will be reversed, and those of the circuit court affirmed.

[1]No opinion for publication.