DENNEY v. LIFE & CASUALTY INS. CO.—136 S. W. (2d), 731.

Middle Section.   September 9, 1939.

Petition for Certiorari denied by Supreme Court, February 17, 1940.

W. M. Fuqua and J. Ross Cheshire, Jr., both of Nashville, for appellant.

Sydney F. Keeble, of Nashville, for appellee.

FELTS, J.  This is a suit by the beneficiary of two industrial insurance policies, totaling $602, issued on the life of the complainant's grandson, Leon Denney.  The insurer defended on the ground that the policies had lapsed for non-payment of premiums, and that it had made settlement in full with complainant by paying him $76.87, which was the amount of paid-up insurance under one of the policies and the extended insurance under the other, less a loan of $18.80. The chancellor sustained this defense and dismissed the bill.

Complainant appealed and has assigned errors, insisting that the preponderance of the proof shows that all premiums had been paid and the policies were in force for the full amount thereof, and that complainant accepted the $76.87 not in full but as part payment, with the understanding that the balance due under the policies would be paid to him.

One of the policies was issued April 30, 1923, and the other March 12, 1928.  The premiums were 20c per week, 10c on each policy. Appellant, his wife, his grandson, the insured, and his cousin, W. B. Denney, all lived together on a farm in Davidson County.  C. C. Denton, the company's agent, had been coming to appellant's home to collect premiums for five or six years or since 1929 or 1930.  The premiums were paid, not 20c each week but in larger amounts at irregular intervals.  At one time W. B. Denney sold Denton some hay and $6 of the price for the hay was applied by Denton to payment of the premiums.  The evidence for appellant is that the premium payments were continued in this way in sums of from $1 to $5 and the insurance kept in force up to the date of the death of the insured, January 15, 1936; while the agent Denton says that no premium was paid after January 17, 1935, the premium for the week ending January 14; that the policies lapsed February 18, the end of the four weeks' period of grace; and that afterwards on more than one occasion he told appellant the insurance had lapsed and tried to get him to resume paying the premiums and reinstate the policies.

On the morning of the insured's death the agent Denton was notified and came to appellant's home.  When the appellant's cousin, W. B. Denney, was ready to go to the undertaker to make arrangements for the burial, they talked with Denton about the insurance. They say he looked at the policies, said they were all right, prepared a proof of death, and took it, the policies, and the premium receipt book, saying he would carry them in to the company and that settlement of the policies would soon be made.  This was January 15, 1936. On January 28, he returned with a check of the company for $76.87 and stated that the insurance had lapsed and that this was all the

company was willing to pay on the policies. Appellant denied that the insurance had lapsed and refused to accept the check. He and W. B. Denney testified that after he had refused to accept the check and as Denton was about to leave the house, W. B. Denney suggested that appellant would take the check provided it was understood that he was doing so only in part payment, and that the company would pay him the balance due on the policies; that Denton agreed to this, delivered the check, and had appellant sign the release on the policies, saying he would return in a few days and make settlement of the balance due. After a delay of a week or two appellant and W. B. Denney went to the home office of the company to try to get a settlement of the balance. They talked with Mr. Womack, the company's district manager, and he advised them he would investigate the matter and write them. Denton again came to see them, stated that the policies had lapsed and that the company was not willing to pay anything more under them. They again went to the home office and talked with Mr. Womack, and on February 22, he wrote appellant that he had made the investigation and that there was no indication that appellant had not received proper credit for all he had paid the agent Denton, and that inasmuch as the claim had been settled the company saw no reason to take any further action.

It was stipulated that if the policies had lapsed, as claimed by appellee, the $76.87 paid appellant was the correct amount due. But upon appellant's theory he is entitled to the full amount of the policies, less the loan and what has been paid him.

Upon a review of the evidence we have reached a conclusion contrary to that of the learned chancellor. We think the preponderance of the evidence is that the premiums on the policies were paid and the insurance kept in force until the death of the insured. This conclusion is supported by the depositions of four witnesses called for appellant, who testify to different payments being made to the agent Denton during the period between January and December, 1935, which payments amounted to $13, which was more than sufficient to pay the premiums on both policies for the period in question. Appellant testifies to three payments being made to Denton on the premiums during this period, viz., $2 by W. B. Denney on March 1, 1935, $5 by appellant in June, 1935, and $3 by W. B. Denney in December, 1935. W. B. Denney likewise testified to these payments. Mrs. Sallie Denney, appellant's wife, testifies that she paid Denton $2 in August and $1 in September, 1935. Her daughter, Mrs. Hurt, testified that she was present and saw the $2 payment made in August.

The testimony of these four witnesses is opposed only by that of the agent Denton himself. While he is supported to some extent by some of the circumstances, we think his denial of these payments is not convincing. These circumstances are that these payments were not entered on the premium receipt book, as provided by the policies,

the last entry on this book being the payment of the premium for the week ending January 14, 1935. But it was the duty of the agent himself to make these entries and to evidence them by his signature; and neither the insured nor the beneficiary had a right to make any entry in this book. The testimony of appellant and his wife is that they thought it was the agent's business to record the payments and left it to him to do so as he saw fit. And appellant and W. B. Denney say the payments were made by them when the agent called by the field where they were at work, and when the premium receipt book was not there. It is true an ordinarily prudent person would not pay premiums on insurance to an agent without either requiring him to give a receipt therefor or to enter such payments in the premium receipt book; but the Denneys were farmers, inexperienced in business matters, appellant and W. B. Denney both being over sixty years of age and unable to read or write; and they had known the agent for many years and had no reason to think any question would ever be made about these payments. From the depositions of these witnesses we are impressed with their honesty and the truthfulness of their testimony. On the other hand, the agent on his cross-examination was involved in many inconsistencies which, we think, very much weakened his denials that these premiums had been paid to him. We think the evidence preponderates in favor of the conclusion that they were paid, and we so find.

The policies here in suit provide that premium payments, to be binding on the company, must be entered on the premium receipt book at the time they are made; and that no agent is authorized to change or waive any provision of the policy. But it has often been held that provisions like these may be waived by a custom or course of dealing pursued for a sufficient length of time. Ellis-Jones Drug Co. v. Home Ins. Co., 158 Tenn., 237, 12 S. W. (2d), 707, and cases there cited; American Nat. Ins. Co. v. Davidson, 166 Tenn., 13, 57 S. W. (2d), 788; compare Lester v. Sovereign Camp, W. O. W., 172 Tenn., 171, 110 S. W. (2d), 471; Unstattd v. Metropolitan Life Ins. Co., 21 Tenn. App., 312, 110 S. W. (2d), 342. We think the proof establishes such a waiver in this case. The agent himself admits he did not always record the payments in the premium receipt book at the time he received them. He said:

"Q. You have collected money on the Denney policies in question when they did not have the book with them, haven't you? A. I could not answer that.

"Q. You could not answer that? A. (No answer).

"Q. You have collected money when you did not have their book? A. I don't know. I think I have collected money that I did not put on the book at the time they paid it in."

And the testimony of the Denneys is that for a long time he had often made collections on the premiums without entering them on

the book, and that during the period from January to December, 1935, he made such collections without entering them. The Denneys had been paying these premiums for twelve years on one of the policies, and for seven years on the other, and had been paying them to this particular agent for five or six years, seemingly without much regard to the requirement that such payments be entered at the time by the agent in the premium receipt book. Under such circumstances we think the authorities above cited require that defendant be held to have waived this requirement.

■■ Appellee insists that the receipts signed by appellant discharged it of all further liability and barred his right to maintain this suit. The receipts did recite that the sums received were "payment in full of all claims against said company" upon the policies. But we think the proof establishes that, before signing these receipts, it was understood that appellant would accept the check for $76.87, which was admittedly due him in any event, not in full satisfaction of his claims but only as part payment of them. This is the testimony of both appellant and W. B. Denney. It also appears that neither of them could read or write, appellant being able merely to "scribble" his name. The agent does not testify that these receipts were read to appellant or understood by him at the time he scribbled his signature thereto. We are satisfied that the written receipts did not embody the understanding under which appellant accepted the check and did not constitute any contract by him to release appellee of further liability under the policies. These writings, being merely a receipt and not a contract, were merely admissions, which could be contradicted or explained by parol evidence (Kenner v. City Nat. Bank, 164 Tenn., 119, 137, 46 S. W. (2d), 46); and we think the preponderance of the evidence shows that at the time the agent had appellant sign the receipts he knew appellant did not, by accepting the check and signing the receipts, intend to release appellee from further liability under the policies.

■ No contention seems to be made by appellee that appellant had to pay back or tender to appellee the amount it had paid him in order to be able to maintain this suit. Under appellee's own theory appellant was entitled to this amount; and in such case a tender was unnecessary in order to enable appellant to sue for and recover the balance due him under the policies. Conrad v. Interstate Life & Acc. Ins. Co., 141 Tenn., 14, 206 S. W., 34; Helms & Willis v. Unicoi County, 166 Tenn., 639, 64 S. W. (2d), 200.

For these reasons the decree of the chancellor is reversed and a decree will be entered here against appellee in favor of appellant for the face amount of the policies, less the loan of $18.80 and the $76.87 paid him, with interest from date of the filing of the bill, together with the costs of the cause including cost of the appeal.

Faw, P. J., and Crownover, J., concur.