FIDELITY PHENIX FIRE INS. CO. *v.* WATKINS.

(*Nashville*, December Term, 1939.)

Opinion filed May 18, 1940.

McConnico, Armistead, Waller & Davis, of Nashville, for plaintiff.

Bass, Berry & Sims, of Nashville, for defendant.

Mr. Justice DeHaven delivered the opinion of the Court.

On September 7, 1932, defendant, Fidelity Phenix Fire Insurance Company, issued to plaintiff, G. W. Watkins, a fire insurance policy in the sum of $1,000 covering a house valued at $800 and a barn valued at $200, for a period of five years. The premium on the policy was $83.10. The insured paid $16.62 cash on the premium and executed an installment note for $66.48, payable $16.62 on the first day of October, 1933, 1934, 1935 and 1936, for the balance.

The policy provided: "But it is expressly agreed that this Company shall not be liable for any loss or damage that may occur to the property herein mentioned, while any promissory note or obligation, or part thereof, given for the premium remains past due and unpaid, which suspension of liability will not be affected by failure of the assured to receive notice from the Company of the approaching due date of the note or any part thereof. . . . The Company may collect, by suit or otherwise, the premium note or notes, and a receipt from the office of the Company must be received by the assured before there can be a revival of the Policy, which shall in no event carry the insurance beyond the original term. . . . In case of loss prior to the maturity of any note given as consideration, the Company may deduct said note in its settlement of claim."

The note provided:

"And it is hereby agreed that, in case of nonpayment of any one of the installments herein named at maturity, this Company shall not be liable for loss during such default, and the policy for which this note was given shall lapse until payment is made to this Company in New York, or to its Western Department at Chicago, and in the event of nonsettlement for time expired, as per terms in contract, the whole amount of installments remaining unpaid on said policy may be declared earned, due and payable, and may be collected by law.

"In the settlement of any loss under the above Policy the Company may deduct therefrom all unmatured installments of this note."

The installment of premium maturing October 1, 1933, was not paid. On October 17, 1933, the company wrote the plaintiff that he had defaulted in payment and that the insurance was suspended during the default. On December 6, 1933, the insured paid this installment and wrote the company, "Please send me a receipt stating this insurance is in force." The premium installment due October 1, 1934, was paid on October 13, 1934. The installment maturing on October 1, 1935, was not paid. The house was destroyed by fire on October 6, 1935.

The plaintiff immediately reported the loss to the company's local agent, who denied liability on its behalf upon the ground that the fire took place while the policy was suspended for non-payment of the installment payment due October 1, 1935; but filled out a form giving the details of the loss, and delivered it to the plaintiff, who in turn took it to his attorney to mail to the company.

On October 12, 1935, plaintiff mailed to the company a certified check for $16.62. The company acknowledged receipt of this check and cashed it on October 17th. On December 6, 1935, plaintiff's attorney wrote the company

a letter, stating that notice of loss had been mailed to it on October 14, 1935. On January 10, 1936, the company tendered to plaintiff $16.62, which he refused to accept. On September 29, 1936, this suit was instituted.

In the trial court, the defendant's motion for a directed verdict in its favor was overruled, and there was a verdict and judgment in favor of plaintiff for $800 and interest. On the company's appeal, the court of appeals reversed the judgment, holding that the trial judge should have sustained the defendant's motion for a directed verdict, and dismissed the suit.

Plaintiff filed his petition for *certiorari* to this court, which was granted and the cause set down for argument.

Plaintiff averred in his declaration, in substance, (1) that defendant by its past course of conduct in accepting payments on premiums after the same had become past due, had waived the provision of the policy as to the forfeiture, and was therefore estopped to rely thereon; and (2) that defendant by acceptance and retention of the premium after loss had occurred, waived or was estopped to rely on the provision of the policy suspending the insurance while the premium was past due and unpaid.

The assignments of error made in this court fairly raise the two above questions.

It is perfectly clear under the language of the contract, as set forth in the policy and in the note, that the parties agreed the company would not be liable for any loss occurring while any part of the premium was past due and unpaid. Under the contract there existed a complete "suspension of liability" during such default.

In *McCullough* v. *Home Ins. Co.*, 118 Tenn., 263, 100 S. W., 104, 105, 12 Ann. Cas., 626, the provisions of the policy and note covering installment payments on premiums,

were practically the same as those in the instant case. There the loss by 'fire occurred while an installment payment was in default. The court denied recovery and dismissed the bill and said, *inter alia*: "Construing the contract evidenced by these instruments in accordance with the intent of the parties as therein plainly expressed, we are of opinion that the Home Insurance Company contracted with the complainants to insure their property, described in the policy, against loss by fire for five years, from March 19, 1902, to March 19, 1907, for the consideration of $60, $12 to be paid in cash, and a like sum on the 1st day of each succeeding January until the entire premium was paid, with the express provision that the policy should be suspended and the company be not liable for any loss occurring while any of said payments may be due and unpaid, with the further right in the company to declare all of the premiums then unpaid due, and to collect the same. In other words, complainants agreed to pay $60, one-fifth in cash and the other four-fifths in annual installments, upon the several days fixed in the note, for indemnity against loss by fire upon their property for the term of five years, subject to suspension of the liability of the company during the continuance of any default made by them in meeting the deferred payments, with the further penalty of all of the unpaid premium being declared due and collectible at the option of the company."

And: "There is nothing in either the application, the policy, or the note tending to show that it was a contract for insurance for five consecutive terms of one year each, nor that payment or installment was to cover the premium for a particular year."

And: "The stipulation for a suspension of liability under a policy in case of default in payment of the pre-

mium is a reasonable one, made to enforce prompt payment of that part of the premium for which credit is given. It violates no principle of public policy or rule of the common or statute law, and is valid. Such a stipulation only becomes effective and injurious to the insured upon their own default in a matter of which they have full notice and about which they cannot be mistaken.''

To like effect, see *Davis* v. *Home Insurance Company,* 127 Tenn., 330, 155 S. W., 131, 44 L. R. A. (N. S.), 626.

The only difference between *McCullough* v. *Home Insurance Company, supra,* and the instant case is that subsequent to the loss plaintiff sent a certified check for $16.62 to cover the defaulted payment of October 1, 1935, which was cashed by defendant but later tendered back. The premium on the five-year policy was $83.10. The company, for the convenience of the insured, accepted a cash payment on the premium of $16.62 and took the note of the insured for the balance, with the agreement that during such periods as the installment payments on the premium might become in default the insurance was suspended. The company earned the whole premium when the policy was issued, and, hence, was entitled to collect the whole premium, as is expressly provided for in the policy and in the note. Thus plaintiff in remitting the $16.62, after the loss, was but paying, in part, an indebtedness that he owed.

The revival of liability under the policy is effective from the time delinquent payments on premiums are made. During the period of default, by the express language of the policy and note, the company shall not be liable. The payment made on October 12, 1935, did not revive the policy as of October 1, 1935, and, therefore, the defendant is not liable for the loss of the house on October 6, 1935.

■ The contention that defendant by accepting payment of past-due installment payments on premium on the two former maturities established a custom or course of dealing between the parties such as to amount to a waiver of the contract provision that the insurance was suspended during a period of default in such payments is untenable. The case of *Ellis-Jones Drug Co.* v. *Home Ins. Co.*, 158 Tenn., 237, 12 S. W. (2d), 707, is relied on. In that case, however, it does not appear that the policy contained provision for suspension of liability during default in payment of premiums and for revival on payment being made. There the policy provided for a forfeiture for non-payment of premium. The custom or course of dealing in receiving delinquent premiums was held to waive the forfeiture. Here the policy provides for a suspension of liability during default in payment on premium installments, with revival on payment being made. The acceptance by defendant of the two past-due payments, prior to loss, was consistent with the policy provisions and not antagonistic thereto. Hence, there was no waiver of the suspension clause of the policy and note.

In *Davis* v. *Insurance Company, supra,* there was default in the payment of an installment premium. The company sued for and received a judgment for the whole amount of the unpaid balance of the note. This judgment was stayed. During the period of the stay, the property insured was destroyed by fire. Recovery was denied under the suspension of liability clause of the contract.

Our conclusion is that the assignments of error are without merit and must be overruled. The judgment of the court of appeals is affirmed and petitioner will pay the costs incurred in this court.